## SUPREME COURT.

PETER A. H. JACKSON, as executor, &c., agt. CORNELIUS
WESTERFIELD and others.

*Will — Specific legacies — Liability of husband for wife's funeral expenses —
Legacies, when payable — Lapsed legacies — Opposing probate of will, when
not a forfeiture of legacy.*

The testatrix, who died in 1878, in her will, after providing that all her
debts and funeral expenses · be paid, directed her executors to keep
invested in government bonds $15,000, and pay the income to her hus-
band, "such payments to commence immediately from and after my
decease." She gave a nephew, by the fifth clause, from and after the
death of her husband, one equal thirteenth part of $14,000, together
with a like share of her household furniture, immediately after her
decease. She also gave him, by the sixth clause, $5,000 of the pro-
ceeds of her real estate. In another clause of the will it was provided
that if any of the legatees should die in her lifetime, " or before the
time when such money should become payable to them respectively,"
then the legacies given to the one so dying " shall go to and be paid to
his or her lawful issue them surviving." The nephew survived her
some months, but died before the probate of the will, in August, 1880,
leaving a widow and several children. By his will he gave his interest
under his aunt's will to his wife by a second marriage. The children
he left were by a former marriage. Eliza Totten, to whom legacies
were given in the fifth and sixth clauses, died without issue in the life-
time of the testatrix:

*Held,* 1. That the executors should purchase government bonds of such
description as $15,000 would have purchased at the death of the testa-
trix, and if that sum will not now purchase as many bonds as it would at
that time have purchased, they should use moneys of the estate to pay
excess of premium. And the husband is entitled to receive out of the
moneys in the hands of the executors, interest at the rate of five per
cent upon $15,000, from the death of the testatrix up to the time of the
investment of the principal sum.

2. Although it may be true that the duty of burying the body of his
deceased wife rests upon her husband, yet the wife may charge by her
will her own separate estate with the expenses of her funeral, and she
having done so, such expenses cannot be charged to the husband.

3. The nephew being entitled, at the testatrix's death, to his interest in
the household furniture, such interest went to his wife under his will.

4. Though the $5,000 legacy to him was a gift of moneys, yet as it was not payable before an actual sale of the realty, and as the nephew died before it was payable, his executors cannot claim it, and it goes to his children, to whom, on such contingency, it was limited, as does also the legacy under the fifth clause, as it was payable only after the death of the husband of the testatrix, and he still lives.

5. The legacies to Eliza Totten lapse, and she not being a descendant of the testatrix, they are not saved by the statute, and so far as the gifts to her embraced any part of the moneys excepted from the sixth or residuary clause of the will, the testatrix died intestate.

6. The legatees who opposed the probate of the will have not thereby forfeited the legacies in their favor under the clause of the will declaring that any beneficiary who should make opposition or controversy in relation to its validity should thereby forfeit the bequest to him or her, it not being apparent that the opposition to the probate was not interposed in good faith or that it was vexatious.

*Special Term, July,* 1881.

ACTION for the construction of the will of Deborah A. Westerfield, deceased.

*H. M. Colyer,* for plaintiff.

*John H. Jackson* and *Charles W. Kimball,* for defendant Westerfield.

*Winfield, Leeds & Morse,* for defendant Bertine and another.

*Edward P. Wilder,* for defendant Peter B. Ross.

*F. J. Moissen,* for defendant Rapelyea and others.

*Charles H. Glover,* for defendant Kate Landy and others.

*M. Hallheimer,* for defendant Sarah Ross.

*Daniel I. Ross,* guardian *ad litem,* for infant defendants and others.

*T. B. Westbrook,* for guardian *ad litem,* for infant defendants.

*L. Redfield,* for children of S. B. Johnson.

Van Vorst, *J.* — By the second clause of her last will and testament the testatrix, Deborah Ann Westerfield, directed that her executors should " keep invested in United States government bonds, of such description as they may think proper, the sum of $15,000," and should collect and receive the income and dividends thereof for and during the life of her husband, and pay over the same to him as the same shall be from time to time received by them, such payments, as she declares, " to commence from and immediately after my decease."

This is not, as is supposed by some of the parties, a specific gift of government bonds. Although the testatrix, at the date of her will, in the year 1867, and subsequent thereto, may have owned government securities, still, at her death she left no bonds of that character. They had been disposed of by her during her lifetime and the proceeds otherwise invested. But for that reason the gift does not, as urged, fail. The gift is rather of money — " the sum of $15,000 " — accompanied by a direction to invest the same in particular securities, of such description as her executors should deem proper.

The executors have not up to this time made the investments, although the testatrix died in the year 1878. A contest having arisen in the surrogate's court, which delayed the probate of the will, doubtless gave occasion to the postponement of the testamentary directions in this behalf. But this obstacle being removed and the will having been probated, the executors should at once purchase, with the moneys of the estate in their hands, government bonds in such quantities and of such description as $15,000 would have purchased at the death of the testatrix, and the income arising therefrom should be paid to the husband of the testatrix, who survives

Jackson agt. Westerfield.

her, so long as he shall live. And if $15,000 will not, at this time, purchase as many bonds as it would have done at the death of the testatrix, of the description determined by the executors, they are at liberty to use moneys of the estate to pay any excess of premiums on such purchase or purchases.

The contest in the surrogate's court over the probate of the will should not avail to deprive the husband of the testatrix of any part of the substantial benefit she intended that he should receive under her will. And upon a similar ground the husband should not altogether lose the income which such investment would have realized from the death of the testatrix, if it had then been, as it was directed to be, made. The estate has had the advantage of these moneys, which the executors have received and retained as assets of the estate. And the aged husband of the testatrix is entitled to receive out of the assets and moneys in the hands of the executors, interest at the rate of five per centum per annum upon the sum of $15,000, from the death of the testatrix up to the time the investment of the principal sum shall be made. Such disposition I think is just, and accomplishes what the testatrix intended in her husband's behalf, whose welfare was clearly uppermost in her mind.

A contention has arisen as to who shall pay the funeral charges and expenses of the testatrix. This is not an agreeable feature in this litigation. It is claimed by some of the parties that the husband, and not the executors, must discharge the debts occasioned by the funeral and burial of his wife, and this notwithstanding the testatrix had a considerable separate estate. Ordinarily this would be a question of administration, and not one to be raised in an action for construction of the will. But the will of the testatrix itself puts the subject at rest, for she orders and directs in the first paragraph thereof, that all her debts and "funeral expenses" shall be paid. The duty, therefore, is cast upon the executors to pay these charges. Although it may be true that the duty of burying the body of his deceased wife rests upon her husband,

yet a wife may charge, through her last will and testament, her own separate estate with the expenses of her funeral. In *McCue* agt. *Ganey* (14 *Hun*, 562) it was in substance decided that a husband, upon the settlement of his accounts as administrator of the estate of his deceased wife, should be allowed out of her estate for her necessary and proper funeral charges paid by him. The fact that it is the duty of the husband to bury his deceased wife does not exempt her separate estate from the ultimate charge (*Redfield's Law and Practice of Surrogates' Courts*, 453).

By the fifth paragraph of her will, the testatrix gave to her nephew, Simeon B. Johnson, from and after the death of her husband, one equal thirteenth part of $14,000, together with a like share of her household furniture, immediately after her decease.

By the sixth paragraph of her will she directs her executors to sell and dispose of her real estate at such times as they may think proper, and of the proceeds she gave to her afore-mentioned nephew, Simeon B. Johnson, the sum of $5,000. These gifts are afterwards qualified, and practically cut down by the provisions contained in the thirteenth clause, in which the testatrix provides that in case one or more of the several persons to whom legacies were given should die in her lifetime, " or before the time when such money should become payable to them respectively," leaving lawful issue living at the time of her death or at the time when the said money or legacy should become payable to them respectively, then she directs that the money or legacy given or directed to be paid to one so dying shall go to and be paid to his or her lawful issue them surviving.

At the time of the death of the testatrix, Simeon B. Johnson, the legatee above named, was living, and he survived her some months, when he died leaving a widow and several children him surviving. Before his death Simeon B. Johnson made and executed a last will and testament, in which he gave all his interest under the will of the testatrix to his wife by a

second marriage. The children he left him surviving were by a former marriage, and were all in being at the death of the testatrix, to whom they were in relationship by blood. The children of Johnson, notwithstanding, claim to be entitled to the legacies contained in the will in favor of their father, and their claim is opposed by the executors under Johnson's will, who affirmatively demand the same to be administered in pursuance thereof. This contention is ended when it is determined what interest Simeon B. Johnson had in the substance of these legacies at his death. His will undoubtedly carried his interest in the household furniture of the testatrix; to that he was entitled at her death.

For the purpose of paying legacies created by the sixth clause of the will the real estate of the testatrix was directed to be sold. This was an equitable conversion out and out of the real estate into personalty, and the gifts are therefore gifts of money. It is, however, urged by the counsel for the children of Simeon B. Johnson, that he died before this legacy was payable, and that by force of the thirteenth paragraph of the will, being a later expression and direction of the testatrix, the children, and not the executors under Johnson's will, take this gift. No time was fixed by the will for the payment of this legacy. It could not be paid, nor in any view was it payable before an actual sale of the realty, to produce the fund to discharge it. But the time of sale was in the discretion of the executors. For certain purposes, doubtless, the conversion is presumed to have taken place at the death of the testatrix. But payment could not be demanded until an actual sale had taken place. It does not appear when the real estate was sold; but the time of actual sale I do not think important. It is not, however, probable that there was a sale until after the probate of the will, which took place on the 31st August, 1880, and Johnson died before that date.

In the absence of any time fixed by the testatrix for the payment of this legacy, she is presumed to have made her will with reference to existing laws.

The common law rule was that, where the will failed to fix a time of payment, the legacy was due and payable on the expiration of one year after the death of the testator. But by the Revised Statutes legacies are payable only after the expiration of a year from the granting of letters, unless an earlier time is fixed by the will. The statute is in form prohibitory (2 *R. S.*, 90, *sec.* 43; *Bradner* agt. *Falkner*, 12 *N. Y.*, 473).

As Johnson died before the probate of the will, and before the legacy was payable, his executors cannot claim this gift of $5,000, but the children, to whom on such contingency it was limited, are entitled to this sum.

Whatever interest Johnson had under the will of the testatrix was liable to be, and was, in fact, terminated by his death before the legacy was payable.

The intentions of the testatrix, as shown by the will, must be carried out. And the result reached is clearly in harmony with such intentions, as it directs the fund in question into channels clearly designed by the testatrix. It goes to the children of Johnson, who were in *esse* before the death of the testatrix, and who were clearly within her contemplation when she made her will, in the event that their father should die before the legacy was payable to him. And for a like reason the gift of the one-thirteenth part of $14,000, given to Johnson by the fifth clause of the will, goes to his children, as it was payable only after the death of the husband of the testatrix, and he still lives. In this case it seems quite clear that the testatrix has made the time of payment a substantial part of the gift.

Eliza Totten, to whom legacies were given by the testatrix in the fifth and sixth clauses of the will, having died without issue, in the lifetime of the testatrix, those legacies lapse.

As the legatee was not a descendant of the testatrix, the legacies are not saved by the statute (2 *Rev. Stat.*, 66, *sec.* 52 ; *Van Beuren* agt. *Dash*, 30 *N. Y.*, 393).

Where a legacy lapses it falls into the residuum. In case

there is no residuary bequest, it goes to the next of kin as estate undisposed of by the will (*Banks* agt. *Phelan*, 4 *Barb.*, 80; *Betts* agt. *Betts*, 4 *Abb. N. C.*, 421).

The sixth clause was intended by the testatrix to embrace and distribute the residue of her estate, and may properly be considered the residuary clause. Yet that clause excepts from its operation the sum of $15,000 directed to be kept invested during her husband's life and for his bene-fit, as it does her household furniture, wearing apparel and jewelry. To the extent, therefore, that the gifts of the testatrix of any part of that money or property to Eliza Totten fail, the testatrix died intestate.

But with respect to the sum of $2,000 given by the testa-trix to Eliza Totten by the sixth clause of her will, and which has lapsed, I think that the clause, in connection with the twelfth, will carry and distribute the sum so lapsed. The language is quite sufficient for the purpose; it operates upon " all the residue of her estate of every kind," with the exception above alluded to, and distributes the same to several legatees — not as a class, but *nominatum*, a specific sum to each.

Thus much for the sixth clause; but the twelfth clause pro-vides that if there be a surplus, that each of the sums given shall be increased in the proportion of their respective amounts to such surplus.

I am of opinion that such is the true construction of the sixth clause, as amplified by the twelfth, and that it is in accord with the intentions of the testatrix, and that the lapsed legacy of $2,000 must be applied to increase the shares of the other legatees in that clause mentioned, in proper proportions.

And as to the legacy in favor of Eliza Totten, created by the fifth clause of the will, and which lapsed, the same is to be paid and distributed to and among the person or persons entitled to receive the same, as provided in the statute in case of intestacy.

The fourteenth clause of the will is in these words: " In

case any one or more of the persons to whom I have hereby given or bequeathed any legacy or any portion of my estate, shall make any opposition or controversy in any court of law or otherwise, in relation to the validity of this my will and appointment, or in relation to any of the legacies or other matters therein contained, each and every person so making such opposition or controversy shall thereby forfeit every portion of my estate hereby given or bequeathed to him or her, and he or she shall be excluded from all participation in my said estate in any manner whatever."

It is now claimed that as certain of the legatees opposed the probate of the will in the surrogate's court, they have forfeited the legacies in their favor. Clauses in wills which impose restraints upon proper inquiry into testamentary capacity and the legality and validity of dispositions of property should not be favored.

The clause in question is very broad, and if allowed to stand in its length and breadth I am not sure but that it would prohibit a legatee from suing for his legacy, as it might involve a controversy about the will, or from taking part in any litigation in which the will, "legacies or other matters therein contained," might be properly brought in question, as it would put in jeopardy whatever benefit the will secured to him. A clause in some respects similar to the above was under consideration in *Rhodes* agt. *The Munswell Hill Land Co.* (20 *Beaven R.*, 560), and it was held to be absurd, inconsistent and repugnant. It has been held in times quite early that a condition of this kind attached to a bequest of personalty where there was no gift over to a third person is not obligatory, but in *terrorem* only, and if there is *probabilis causa litigandi* there will be no forfeiture (1 *Roper on Legacies* [2 *Am. ed.*], 795; 1 *Jarman on Wills* [3 *Am. ed.*], 713, *m. p.*, 850; 2 *Williams on Ex'rs*, 1093; *Powell* agt. *Morgan*, 2 *Vernon*, 90; *Morris* agt. *Burroughs*, 1 *Atkyns*, 404; *Lloyd* agt. *Spillet*, 3 *Peere Williams*, 345).

I cannot say that the opposition to the probate of the will

Dusenbury agt. Keiley.

was not interposed in good faith, or that it was vexatious. In fact, I think there was probable cause to justify an inquiry into the testamentary capacity of the testatrix. She had once been adjudged — in a proceeding instituted for the purpose of inquiring into her mental condition — of unsound mind, and a committee of her person and estate had been appointed. The result in the surrogate's court, however, upheld the will. I do not think that the persons who took part in such opposition have forfeited their legacies, but are entitled to receive the same.

Findings of fact and conclusions of law in pursuance of the above must be prepared by the attorney for the plaintiff, and a copy thereof, with notice of settlement before me of five days, must be served upon each of the parties who have· appeared in this action.