Van Vorst, J.
Sally K. Grodon, a resident of New York, made her last will and testament, dated February 1, 1873, in and by which, after giving to a faithful servant an annuity of two hundred dollars, and to a relative a diamond ring, she disposed of the residue of her estate in these words:
“Third. All the remainder of my estate, real and personal, I give, devise and bequeath to my husband, Sylvanus Wm. Grodon, and at his death to go to my son, Frederick Wm. Codon, and to his natural heirs.”
The testatrix died possessed of personal property, but before her death, her son, Frederick Wm., named in the will, died without issue, and unmarried. The *226 testatrix died in 1877, leaving her husband, Sylvanus W. Godon, her surviving, but no issue.
The will was duly proved in New York, and letters testamentary were granted to the surviving husband, who reduced to his possession all the personal estate of his deceased wife. The allegation in the complaint in this regard, is that this personal estate “came into the hands of said Sylvanus W. Godon, as executor, to be disposed of according to the provisions of said will.” Her husband was not named as executor in the will, but, from the duties imposed, it is clear enough that the testatrix meant that he should, discharge them according to its tenor, and letters testamentary were properly issued to him by the surrogate. The executor never filed any inventory of the estate, and rendered to the surrogate no account, and has made no settlement in that court.
In the year 1879 Sylvanus W. Godon died, and at the time of his death he was possessed of the estate of his deceased wife, which, as the complaint alleges, “came info his hands as aforesaid, as the executor of her last will and testament.” Before his death, Sylvanus W. Godon made his last will and testament, bearing date the 24th day of April, 1878, in and by which he appointed William Alexander Smith executor thereof and trustee of his estate. His will was duly proved, and letters testamentary were granted to the executor, who took upon himself the administration of the estate.
Among the property which came into the hands of William Alexander Smith, as executor, was the personal property which Sylvanus W. Godon had received , from the estate of his deceased wife, and which still remains in the hands of William Alexander Smith as executor.
The plaintiff is a sister of Sally K. Godon, and claims, .as one of the next of kin and heirs at law of *227 her deceased sister, to be entitled to one-third of the estate in the hands of William Alexander Smith, as executor, derived from the estate of her sister Sally K. Grodon, deceased.
The above presents all the substantial facts necessary to be considered in disposing of the questions of law raised by the demurrer of the defendants to the plaintiff’s complaint; it being urged on the behalf of the defendants, among other objections, that the complaint does not state facts sufficient to constitute a cause of option.
This controversy in fact turns, and the rights of the parties are principally dependent, upon the construction to be given to the third paragraph of the will.
And such construction is as follows: Sylvanus W. Grodon, under the will of his wife, took only a life estate in the “remainder.” There was in substance a bequest over of the remainder after her husband’s death, to her son Frederick William (Taggart v. Murray, 53 N. Y. 233; Smith v. Van Ostrand, 64 Id. 278, and cases cited). There is no repugnancy in a general devise to one person in terms that would ordinarily convey the whole estate, and a subsequent provision giving the same estate to another person upon the happening of a contingent event. Terry v. Wiggins (47 N. Y. 512, 518), and Smith v. Van Ostrand (supra), applies the same rule to gifts of personal property.
But the bequest in favor of Frederick William never took effect, for the reason that he died without descendants, in the lifetime of the testatrix. The gift over of the remainder lapsed, and not being otherwise disposed of by the will, as' to it, Sally K. Grodon died intestate (Vernon v. Vernon, 53 N. Y. 351, 362; Van Bueren v. Dash, 30 Id. 393; Jackson v. Westerfield, 61 How. Pr. 399, 405; 2 R. S. 66, § 52). And this, notwithstanding that the gift over was to her son, Frederick William, and “to his natural heirs,” the latter *228 being mere words of limitation (1 Jarman on Wills, 338, and cases cited). A legacy to A. and to the heirs of his body is an absolute gift to A. (2 Williams on Executors, 1,108; Wintermuth v. Snyder, 3 N. J. Eq. 489; Crawford v. Trotter, 4 Madd. 361). And yet, in a struggle between those claiming under his will, and the next of kin of the testatrix, these words seem to indicate that the husband’s claim and right to this property is in harmony with the intentions of the testatrix.
The plaintiff’s claim is that this undisposed - of remainder, upon the death of the testatrix, devolved upon her next of kin and heirs at law. On the other hand, it is claimed by the defendants, that to this remainder, under the facts, the husband of the testatrix was exclusively entitled, arid the fact that her husband took out letters testamentary, and being executor took the property, does not affect the question or prejudice his absolute rights to the personal property of his wife, as to which she died intestate.
Mr. Arnoux, for the plaintiff, has submitted an elaborate and carefully-prepared brief, in which he endeavors with learning and argument to maintain the claims of the plaintiff to a portion of this estate, as one of the next of kin of the testatrix.
He founds an argument upon the statutes known as the Married Woman’s Acts, and upon changes in the statutes through which the rights of a feme covert to acquire and hold during coverture a separate estate, and to dispose of the same by last will and testament, are secured. And he urges that under the existing laws of this State a husband now succeeds to the personal estate of his deceased wife only through and in case of an administration thereon, when she dies without a will; and, further, that Mrs. Codon having died testate, and having in her will made provision for *229 her husband, the unbequeathed remainder devolved upon her next of kin.
But the case of Barnes v. Underwood (47 N. Y. 351), * I think, disposes of the substantial questions involved in this contention, and I do not think it important to do more than refer, in a general way, to what was chiefly decided in that important case.
The right of the husband to his wife’s personal property, and the foundation of the right, and the changes wrought in former statutes by repeal and amendment, through the various acts having relation to the rights of married women, were all proper subjects of consideration in that case, and Chief Justice Church summarized, in the course of his opinion, the law as it formerly and now exists, in so far as it touches the questions involved in this action. The conclusions of the chief justice may be shortly stated as follows: By the common law, marriage was an absolute gift to the husband of the goods and chattels and personal property of which the wife was actually possessed, and of such as came to her during coverture, as to such property the title was vested in the husband, and upon his death it went to his representatives, and that if the wife died first, it was his property after, as it was before her death, and as to it no administration was necessary. But as to choses in action of the wife, not reduced to possession during marriage, if the wife survived her husband, upon her death they went to her representatives. But if the husband survived, he had the sole right to administer for his own benefit and enjoyment, in preference to the next of kin of the deceased wife. No administration was, however, necessary as to property which had vested in him during marriage.
The chief justice then examined the question as to whether the common law right of administration and enjoyment had been taken away or impaired by stat *230 ute ; and in this connection he refers to and explains sections 29, 30, 75 and 79 of the Revised Statutes, the same which are referred to by the counsel engaged in this action, by which the estates of married women were exempted from the statute of distribution in case of intestacy ; and the right of the husband to administer upon her estate to the exclusion of others was fully recognized and secured, as was his right to recover and enjoy the same,' as he was entitled by the rules of the common law (2 R. S. c. 6, tit. 2, art. 2, §§ 29 and 30, p. 74; 2 R. S. c. 6, tit. 3, art. 3, p. 96, §§ 75 and 79). The chief justice then refers to the claim, which in that case was interposed, that the new statute with respect to the rights of married women, together with the amendment of section 79 and the repeal of section 20, had deprived the husband of all common law rights to the property of his deceased wife.
The conclusion he reached was adverse to such contention, and he said that the amendment of section 79 did not profess to change the law, except in the specific case of a married woman dying leaving descendants, and that the acts of 1848 and 1849 gave the wife control of her separate estate, with power of testamentary disposition during life, but that if she died intestate the rights of her husband as her successor are not impaired. Such conclusion, I apprehend, establishes the rightfulness of the claim of the husband of the testatrix, by the principles of the common law, to the personal property which she left undisposed of by her will. It is urged, however, on behalf of the plaintiff, that Mrs. Grodon did not die intestate, because she made a will which was duly established.
The word intestacy is not confined to a person dying without any will whatever (Code Civ. Pro. § 2,514, subd. 1). It covers the case of a person leaving a will disposing of none, or a part only, of her personalty (2 Kent Comm. 408). In Lefevre v. Lefevre (59 *231 N. Y. 434),* it is, in substance, stated that personal property undisposed of by a will passes as in case of entire intestacy (Kerr v. Dougherty, 79 N. Y 327).
That the statutes of 1848 and 1849 do not apply to the case of a. feme covert, dying intestate, either wholly or in part, appears by McCosker v. Golden (1 Brad. 64, 68); Ryder v. Hulse (24 N. Y. 372).
It follows, in fact, from Barnes v. Underwood, and the other cases cited, that the common law rights of the surviving husband to the personal property of his wife dying intestate, without descendants, notwithstanding subsequent statutes, remain unimpaired, and that the same is still exempted from the statute of distribution, and that the surviving husband is entitled to the same, in preference to the next of kin and heirs of the wife. This clearly results from what is stated towards the close of the opinion of Chief Justice Church, in Barnes v. Underwood. He says: “I think it obvious that the legislature did not intend to abrogate all the common law rights of the husband, declared in the twenty-ninth section—1st, because it allowed that section to stand unrepealed; and, 2d, because it expressed the intention in the amendment of the seventy-ninth section to give the husband and wife equal rights as survivors in their respective estates, when there were descendants; and if it was intended to interfere with the rights of the husband in other cases, it is presumed that the same principle of equality would have been preserved. The construction contended for would deprive the husband, in all other cases, of any interest in his wife’s personal estate, while a widow is entitled to a larger interest when the husband leaves no descendants than when he does.”
Mrs. Godon died in 1876, and three years after-wards her husband, Admiral Godon, died, having in his possession all of her personal estate.
*232 The complaint, as already stated, alleges that the husband of the testatrix took this property into his possession “as executor” of the will of his deceased wife. As executor he was authorized to take possession of the estate of the testatrix, and to hold it for all the purposes of the will, and after such purposes were fully met, the residue of the property he would at least-be legally entitled to hold in trust for those to whom it was payable by the provisions of law. Being lawfully in possession, he would be entitled to hold same against every person not having a superior claim or right, and only when such better right was established could he be disturbed ' in his possession and right to control the same (2 Story Eg. Jurisprudence, § 1,208).
It is quite true that, in Barnes ». Underwood, it. is ' said that “ it is unnecessary to determine the effect of the repeal of the thirtieth section until a case is presented where the husband does not' himself administer upon the estate.”
The implication arising from this statement is, that letters of administration in the case suggested should have been granted to some person other than the husband, upon his neglect or refusal to apply for the same, and such is the- contingency contemplated by section 30.
But such fact does not exist in the case we are considering. No person other than the husband of the testatrix has -administered the estate or attempted to do so, and in opposition to him no person other than himself could have administered (section 29). But, for all necessary purposes, the husband has exercised “ administration ” over the assets and property of his deceased wife. Although in the origin of thpir title, the offices of administrator and executor differ, yet both in fact administer the personal estate—each is clothed with the legal-title to the property.
The administration of the executor is under the *233 will so long as it furnishes a guide; that of the administrator is under the statutes. Yet in a true sense the action of each is an “ administration ” of the personal estate. And when an executor has qualified, he, in practice, actually takes the whole personal estate and administers it. Although it should turn out in the end, that through an invalid disposition as to a portion of the estate, the testator died intestate, as to such portion of the estate, the testamentary disposition of which was void, he would still be entitled to hold the same for the persons legally entitled to claim it in such contingency. The executor would, so to speak, in such case “ ex officio” administer and pay over such portion of the undisposed-of assets. In this view, in order to protect his rights to property which he was lawfully entitled to claim and hold as his own, he would not be absolutely bound to take out letters of administration in addition to letters testamentary.
For where a person obtains lawful possession of personal property, although it might be for a special purpose, yet when those exigencies are met, he would be entitled individually to hold the same under a bona fide claim of title to its ownership, because the possession and the absolute right would then rest in the same person. In no event do I think that the plaintiff as next of kin of the testatrix has any standing to dispute the right of the executor under the will of Admiral Codon to the possession of the property to be disposed by him to those who have legal claims to its ultimate enjoyment under the will (Matter of Harvey, 3 Redf. 214).
I do not think from the whole scope of his opinion, and the conclusions reached by the chief justice in Barnes v. Underwood, that what was said by him, that the husband was “entitled to the estate because he had a right to administer” is to be construed as meaning, that through a failure to take out “ letters of adminis *234 tration,” in a case like the present one, AdmiralGrocLon lost his right to property with which he was legally invested. Valuable rights to property, actually possessed and held, are not lost in that way. It is not necessary to determine what would have been the effect of a failure to take out letters of administration, if the husband had died without having reduced the property into his possession and control, and had while living, by an omission to act, acquiesced in the hostile claims of others in possession.
But in the case under consideration, having the property legally in his possession by virtue of the letters testamentary, he stood towards the “remainder” in which, by the terms of the will, he had a life interest only, in such an attitude, that he could not have been disturbed, while living, by any hostile claim whatever, and he required no formal act, by way of letters of administration, to completely perfect in himself the title to this remainder, with which he became fully invested when the will took effect, upon the death of his wife ; her son, to whom the remainder was given, having previously died without descendants. For at that time, upon the principles above named, his interest for life was merged in the higher right to tlie entire property. He held the property during his life as owner. He evidently believed that his title and possession was good, and he exercised the right of an owner to dispose of it in his last will and testament.
I am referred by the learned counsel for the plaintiff to the case of Kearney v. Missionary Society,* in this court, decided by me at special term, April 9, 1879, as holding views in support of the argument he has so earnestly presented here. In that case the husband died without having administered, and the property in dispute was never in his possession or under his personal control; but so long as he lived, the legal title and possession were in others for the purposes of *235 the will of the testatrix. That case differs essentially from the present one in its facts. I do not think that it upholds the plaintiff’s propositions ; but if it announces doctrines in opposition to the conclusions reached in •this case, to that extent it cannot be followed.
There must be judgment for the defendants on the demurrer.

Reversing 3 Lans. 525.

Reversing in part, 2 Sup’m. Ct. 330.

Reported on p. 374, post.