JOHN S. RUSSELL *et al.*

*v.*

MARY MADDEN.

*Filed at Ottawa June 16, 1880.*

1. DESCENTS—*personal property—by what law governed.* The succession to personal property is governed by the law of the actual domicil of the intestate at the time of his death, no matter what was the country of his birth, or his former domicil, or the actual *situs* of the property at the time of his death.

2. SAME—*in the State of Sonora, Mexico.* A citizen of the United States became domiciled in the State of Sonora, in the Republic of Mexico, and died there, intestate, leaving considerable property in that country, but leaving no child or children, or descendants of child or children him surviving. There were, however, brothers and sisters of the deceased, and his mother, who survived him. The law of the State of Sonora, in regard to the succession to estates, provides that "if there be only a father or mother living he or she

shall succeed the child in the entire estate." So it was held, the mother of the deceased, the father being dead, succeeded to the whole of his estate situate in the State of Sonora, to the exclusion of his brothers and sisters.

3. SAME—*as to an acceptance of the inheritance.* In a contest between different claimants to the succession to an estate situate in a foreign jurisdiction, no question can arise, as between the several claimants, in respect to an acceptance of the inheritance by the party seeking to recover the estate. That question can only arise between the party seeking the recovery and the officers having the custody of the estate in the foreign jurisdiction.

4. CHANCERY—*jurisdiction to determine the succession to an estate.* Where a person has assumed to take possession of an estate under a claim of heirship, a court of chancery has jurisdiction, at the suit of another claimant, to inquire and determine as to the true succession, and to direct the proper distribution. It is one of the usual grounds of equity jurisdiction to discover and compel an account of funds wrongfully concealed and withheld from the real owner.

WRIT OF ERROR to the Appellate Court for the First District.

Messrs. MILLER & FROST, for the plaintiffs in error:

The complainant has not, by any allegation in her bill or any proof on the hearing, informed the court of the statutory mode in the State of Sonora of settling the estates of deceased persons. In the absence of any proof on the subject, the courts of this State will assume that the mode there is similar to that prevailing here.

This court held, in *Leamon* v. *McCubbin,* 82 Ill. 263, that heirs can not maintain an action, in their own name, to recover personal assets belonging to an estate, even when there are no debts, and no administrator has been appointed. A party who can not bring an action at law to recover these assets, can not maintain a suit in chancery for that purpose. His want of title is as serious an impediment in the one tribunal as the other.

It appears, from the evidence, that the Republic of Mexico has adopted the Civil Code, with permission to the States to make such modifications of it, from time to time, as they

shall see fit to make. The defendant in error founds her claim upon one article of this code:

Art. 3869. "If there shall be only a father or mother living, he or she shall succeed the child in the entire estate."

It can not be supposed that the laws of the State of Sonora make no provision for the payment of debts of the decedent out of the estate. The proof shows that the debts owing by this estate amounted to about $2000.

If the parent takes the property after the debts are paid, some form of administration is absolutely necessary.

Under the civil law the parent may take the succession purely and simply, in which case the parent becomes bound for all the debts, without regard to the amount of property received, or the parent may accept the succession with the benefit of inventory, in which case no obligation is assumed for the payment of these debts, and the person taking the succession in that way can have no right to be put in possession of the property until after the administration thereof is closed. *Succession of Stephen Duncan Lincoln,* 27 La. Ann. 352.

If the party entitled does no affirmative act accepting the succession in either mode, then the succession becomes vacant, and the estate goes into the hands of a public officer to be administered and settled.

It is not pretended that the complainant ever accepted the succession or did any other act whatever in the State of Sonora by which she became entitled in any manner to interfere with or exercise dominion over this property, or that it ever became hers under the laws of that State.

If the defendants have received from these surviving partners money that did not belong to them, and if the payment of it was induced by fraud, then they are liable to the parties who paid the money. The right of action for the wrong resides in them,—they alone have been injured.

If Michael McMahon and his sisters had received this money as the money of complainant, acting under a pretended

authority from the complainant to collect and receive it, then the complainant could have ratified the payment to them, and could have brought her action against them for the recovery of the money. But they received the money as their own, under a claim fraudulently made, as complainant contends, that they alone were the heirs of Thomas McMahon.

The money was paid them as money belonging to them as such heirs, and the parties lawfully entitled to it. If the complainant ratifies that payment, she must ratify it as it was made, and that, of course, would end her case.

If the money paid to the McMahons and Russells, if any was so paid, belonged to the complainant, then she has a plain and adequate remedy at law. *Crittenden* v. *Rogers,* 42 Ill. 95; *Coughran* v. *Swift,* 18 id. 414; *City of Peoria* v. *Kidder,* 26 id. 352.

The defendants do not sustain to the complainant in the court below the relation of trustees in respect to the money received by them, and the court of chancery can not retain jurisdiction of this case on any such ground. *Doyle* v. *Murphy,* 22 Ill. 502; Perry on Trusts, sec. 135; *Hawthorne* v. *Brown,* 3 Sneed, 462; *Ensley* v. *Ballentine et al.* 4 Humph. 233; *Pascoag Bank* v. *Hunt,* 3 Edw. Ch. 583.

Messrs. ROBERTS & HUTCHINSON, for the defendant in error:

The court of equity had jurisdiction in this case under either and all of the heads of fraud, trust and distribution of estates.

1. Although there may be a remedy at law in an action for money had and received, yet in cases like this, involving fraud, courts of equity have concurrent jurisdiction, and will assume it, especially where the remedy at law is not as complete and effectual as in equity. Story's Eq. J. sec. 1256; *Varet* v. *New York Ins. Co.* 7 Paige, 560–8; *Truett* v. *Warner,* 4 Gilm. 418; *Morris* v. *Thomas,* 17 Ill. 112; Bigelow on Frauds, 332–3–4; Tiffany & Bullard on Trustees, 119.

2.   A court of equity has jurisdiction at the suit of creditors, legatees or distributees, to compel a foreign executor even, or other person within the jurisdiction, to account for money of the estate received out of the jurisdiction and unlawfully withheld.   *Tunstall et al.* v. *Pollard's Admr.* 11 Leigh, 1; *Duffy et al.* v. *Buchanan et al.* 1 Paige, 453; *McNamara et ux.* v. *Dwyer et al.* 7 Paige, 239.

3.   A court of equity has jurisdiction, as in this case, to enjoin the parties who are before it from seeking fraudulently to recover money out of the jurisdiction.   *Great Falls, etc.* v. *Worster,* 23 N. H. 470; *Dehon* v. *Foster,* 4 Allen, 545; 2 Story's Eq. J. secs. 899–900; *Porterlington* v. *Soulby,* 3 Myl.& K. 104.

4.   The receipt of the money by the defendants below, and especially the investment of a part of it in the mortgage securities, as shown, created a constructive trust in favor of the complainant below, and entitle her to follow the securities and claim them.   They became trustees *de son tort.*   2 Story's Eq. J. sec. 1254; Perry on Trusts, sec. 166 ; *The President, Directors and Co. etc.* v. *Pollock,* 4 Edwards' Ch. 215; *Newton* v. *Porter,* 5 Lansing R. (N. Y.) 416; *Attorney General* v. *Illinois Agricultural College,* 85 Ill. 516–21 ; Hill on Trustees, 173.

5.   A court of equity has jurisdiction to ascertain and determine who are the lawful distributees of an estate.   *Townsend* v. *Radcliff,* 44 Ill. 446; Story's Eq. Jur. sec. 532.

A court of equity, having acquired jurisdiction for any purpose, will retain it for all purposes, in order to do complete justice.   *Morgan* v. *Roberts,* 38 Ill. 65.

The personal estate of a citizen of one country, dying domiciled in another country, is distributed according to the law of the latter.   Story's Confl. of Laws, sec. 481.

6.   Defendant in error elected to ratify the sale of the residue of the estate, and was therefore entitled to pursue the proceeds.   Herman on Estop. p. 464, secs. 471–4, 482, 580; *White* v. *Sutherland,* 64 Ill. 181.

7. Although the complainant sued at law for a portion of the money due her, she was entitled to proceed in equity for that and the residue, and, at most, the defendants could only have required her to elect her forum, but they did not. Leading Cases in Equity, part 2, vol. 2, 1319; 2 Daniels' Ch. Pr. (4th ed.) 815, and notes; *McKaig* v. *Piatt*, 34 Md. 249.

8. Where there are no debts, an estate may be lawfully divided by the distributees, and no administration then is necessary; and in such case a court of equity would enjoin an administrator, subsequently appointed, from interfering with the estate. *Spann* v. *Jennings*, 1 Hill, 324; *Barron* v. *Burney*, 38 Ga. 264; *Harris* v. *Seals*, 29 id. 555; *Riley* v. *Loughbrey*, 22 Ill. 97; *Cross* v. *Carey*, 25 id. 562; *Lynch* v. *Rotan*, 39 id. 14.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

In 1874, Thomas McMahon, a citizen of the United States, died intestate while domiciled in Sonora, Mexico, leaving neither child nor decendants of child or children him surviving. At the time of his death he was the owner of an interest in an unincorporated mining company, located in Sonora, of the value of about $20,000. There survived Thomas McMahon his mother, Mary Madden, complainant, and Michael McMahon, Mary McMahon, intermarried with John McGraw, and Margaret McMahon, intermarried with John S. Russell, his brothers and sisters, all of whom resided in this State. After the death of Thomas McMahon, it appears the United States Consul resident in that country, as was his duty under the laws of the United States, with the consent of the local authorities, took possession of his effects for the benefit of those entitled to the same. Soon after his death the company of which Thomas was a member declared a dividend, and his share ($5000) seems to have been paid to the agent of defendants.

After learning of the death of his brother, Michael took steps to secure the estate for himself and his sisters, taking no

notice of any interest that their mother might have in the estate. He obtained from his sisters and their husbands a power of attorney, which enabled him, upon making some proof as to heirship, to get possession of the dividend declared in favor of the intestate ($5000), which was divided equally with his sisters or their husbands. Through the agency of his attorney in fact he effected a sale of the interest deceased had in the mining company, for $15,000, and that sum, less some expenses, we understand from the evidence, the attorney in fact of defendants still retains in his hands.

On learning what had been done, Mary Madden filed this bill, claiming that under the laws of the country where her son was domiciled at the time of his death, she was his sole heir, and therefore entitled to the whole estate to the exclusion of his brothers and sisters, and asks for a decree that the parties who had received a portion of the estate should account for the same to her, and that they may be enjoined from collecting the residue from the party in Sonora holding the same, to abide the result of this litigation.

On the hearing in the circuit court the relief sought by the bill was substantially granted. That decree was affirmed in the Appellate Court, and now two of defendants, John S. and Margaret Russell, bring the case to this court on error.

This case has been elaborately argued and many questions raised, but in the view we have taken, the decision rests on a single question, and our conclusion may be briefly stated. If it shall be held that complainant is the sole heir and entitled to the whole of the estate left by her son at his death, the decree is substantially correct, and we need not consider it as respects the specific relief granted.

It is conceded that complainant is the mother of deceased whose estate is a matter of contention between her and his surviving brothers and sisters. The doctrine is that the succession to personal property is governed by the law of the actual domicil of the intestate at the time of his death, no matter what was the country of his birth or his former domi-

cil or the actual *situs* of the property at the time of his death.
Story's Conflict of Laws, sec. 481.

Proof was made that the Republic of Mexico had adopted
a Civil Code, with the privilege to the several States to adopt
the same in whole or in part.   The State of Sonora, as shown
by the testimony, has made some modifications of the Civil
Code.

Among the articles of the code providing for the succession
of property, is one, "if there be only a father or mother
living, he or she shall succeed the child in the entire estate."
An exemplified copy of this statute is found in the record, and
we think it is sufficiently proved, and that it was in force at
the time of the death of the intestate.   In the absence of any
adjudications by the courts of that country, no reason is per-
ceived why this court may not construe this statute as it is
plainly expressed.   Accordingly our understanding is, under
this law of succession in force, as it is made to appear to us
from the proof, in the State of Sonora at the time of the death
of the intestate, an unmarried person dying intestate, leaving
no children, his entire estate will be inherited by the father
or mother, if living, to the exclusion of brothers and sisters.

That being the law of the domicil of the intestate, at the
time of his death, regulating the succession of estates, it is
conclusive of this case.   The mother—the father being dead—
became and was the sole heir to the estate left by her deceased
son, to the absolute exclusion of all his brothers and sisters.

Defendants having obtained the funds of the estate under
the laws of Sonora, as distributees of the intestate, it does
not lie with them to say complainant had not accepted the
inheritance to which she would be entitled under the laws
of that State.   As between complainant and defendants no
such question can arise.   It could only arise between the com-
plainant and the officers having the custody of the estate in
Sonora.   It is not a matter that concerns defendants.   Com-
plainant being the sole heir, under the laws of the domicil of
the intestate, at the time of his death, she is the owner of the

estate he left, as against defendants, and they ought not in conscience to be allowed to withhold it from her. The proof of her ownership is as full as it need be made, and is altogether satisfactory.

There can be no question a court of equity has jurisdiction to entertain this bill. It is one of the usual grounds of equity jurisdiction, to discover and compel an account of funds wrongfully concealed and withheld from the real owner. That is precisely the case here, and we think the court had jurisdiction to pronounce the decree it did.

The decree will be affirmed.

*Decree affirmed.*