NEW YORK COUNTY.—HON. RASTUS S. RANSOM, SURROGATE.—February, 1889.

MATTER OF STEWART.

*In the matter of the application to revoke the probate of the will of* CORNELIA M. STEWART, *deceased.*

A condition against disputing the will, annexed to a legacy, is not invalid because the legacy is not given over in case the legatee violates the condition.

A legatee under the will of deceased, had with a number of other legatees and a devisee, who were also next of kin and heirs at law of deceased, signed an agreement that in the event of the will of deceased being set aside, the legatees should receive the legacies as directed under the will, and should also take as in intestacy, as next of kin and heirs at law, the half of the estate, which, under the will, had been given to a trustee. A provision of a codicil to the will directed that if any legatee, next of kin or heir, should directly or indirectly institute or become an active party to any proceeding to set aside, interfere with or make null any provision of the will, such act should release the claim of such legatee, etc., to any part of the property or estate, and that any provision of the will in favor of such party should be abrogated, annulled and made void. A proceeding to revoke the probate of the will was brought by a legatee not a party to the agreement, but who had an option, by its terms, of coming in thereunder and taking the benefits thereof. The above mentioned legatee, who had interposed an answer in the proceeding, affirming the validity of the will, was called as a witness on behalf of the contestant to testify as to personal transactions with the testatrix. *Held:* That by having signed such an agreement, the witness had forfeited her legacy under the will, had become hostile thereto, and therefore could not, under section 829 of the Code of Civil Procedure, testify as to personal transactions with the testatrix.

APPLICATION for the revocation of the probate of the will of Cornelia M. Stewart.

Cornelia M. Stewart, the widow of the late A. T. Stewart, died in the month of October, 1886, having executed in her lifetime a will and certain codicils, which were propounded for probate as her last will and testament, by Henry Hilton, one of the executors therein named, before the Surrogate of the County of New York. Upon such proceedings the will and codicils were admitted to probate without any contest, November 13, 1886.

By the will and codicils the estate of the deceased was divided as follows :—Several legacies were given to certain next of kin of the deceased ; and one fourth of the residuary estate real and personal was devised to Sarah N. Smith. One other quarter was devised

and bequeathed to Charles J. Clinch, and the remaining one half of such residuary estate was devised and bequeathed to Henry Hilton, one of the executors named in the will, upon certain trusts, and with certain powers over, respecting the one half. Henry Hilton and Charles J. Clinch were named as executors in the will and codicils.

After the probate of the will, an action of partition of all the real estate of which Mrs. Stewart died seised, was begun in the Supreme Court, by Prescott Hall Butler, one of the heirs at law and next of kin of deceased, against all the parties interested in the estate, claiming among other things that all the provisions of the alleged will and codicils devising one undivided half of the residuary real estate to Henry Hilton in trust and conferring upon him certain powers in respect thereto, were illegal, ineffectual, and void upon the face thereof, and were procured and obtained by Henry Hilton from the deceased by undue influence and fraud, and upon those grounds should be set aside and annulled, if otherwise they would be of any validity.

An action was also begun in the Supreme Court by Sarah N. Smith, residuary legatee and devisee under the will, in form an executor's action, brought upon the refusal of the executors to sue, seeking to set aside certain transfers of real estate made by Mrs. Stewart to Henry Hilton and William Libbey, and also other transfers of real estate made to Henry Hilton, to the end that the estate might receive the same and the accumulations thereof.

And Rosalie Butler, also one of the next of kin

and heirs at law of deceased, on October 28, 1887, presented to the Surrogate her petition containing allegations against the validity of the will and codicils on the ground that the same were obtained by undue influence and fraud, and prayed that the probate thereof might be revoked.

The proceedings before the Surrogate upon the petition of Rosalie Butler were very lengthy, and a large amount of testimony was taken on behalf of the petitioner.

Among other witnesses called on behalf of the petitioner was Kate A. Wetherell, one of the legatees under the will, and who, so far as the record disclosed, had taken no hostile action against it, having interposed an answer to the petition alleging the validity of her legacy, and who also testified that she wished the will and codicils to be sustained and admitted to probate.

It appeared, however, that the witness as well as other legatees, next of kin and heirs at law excepting the petitioner Rosalie Butler, Virginia Butler, Prescott Hall Butler and his two infant sons, had signed a certain agreement of indemnity of which the substance was as follows:—

The agreement gave first, by way of preamble, the relations between the parties, and their desire to avert controversy between themselves in relation to the estate of Mrs. Stewart; the facts as to bringing the various suits, and the institution of this proceeding.

Article first provided that if upon the judgment in either of the actions now pending in the Supreme Court, or the present proceeding in the Surrogate's

Court, or any other actions or proceeding, in which the validity, operation or effect of the alleged will and codicils or any part thereof should be brought in question, and the legacies of either of them should be set aside or annulled, or should fail of support under the said alleged will and codicils, or should not be collectible or enforceable under the same, and if, in such case, any portion of the real and personal estate should descend to, or vest in, any or either of the parties to this agreement as heirs of law and next of kin of deceased, that then and thereupon, such portion of such real and personal estate in the proportions in which it should descend to or vest in such parties respectively, should, after the payment of debts of the deceased, be primarily liable for the payment of the proportionate amount of such legacies (in preference to any other disposition of such portion among any of the parties to this agreement), in the same manner and to the same extent and effect as such portion would be so liable if the provisions of the alleged will and codicils bequeathing such legacies remained in full operation.

This article was followed by certain provisions carrying out in detail the scheme therein set forth, but not affecting any of its main features except that it was provided as follows :—

That the provisions of the agreement should not apply to the legacies given by the will to Prescott Hall Butler, Rosalie Butler, and Virginia Butler, respectively, unless they should (from any or either of the portions of such real and personal estate of the said Cornelia M. Stewart, which, in the contingencies

hereinbefore contemplated, might descend or vest in them respectively) so contribute respectively towards the payment of the other legacies hereinbefore referred to, and also so far as they are respectively concerned in making good to the said Sarah N. Smith the residuary one fourth part, hereafter in article second referred to, and should so contribute as if they (said Prescott H., Rosalie and Virginia Butler) were respectively parties to this agreement, upon the same footing with their brother and sisters respectively.

Article second provided that, in case of setting aside of the will and codicils in the present or any other proceedings whereby Sarah N. Smith should lose her one fourth part of the residuary real and personal estate, the parties to the agreement would make good to her the said one fourth part.   It was provided, however, that Mrs. Smith's one fourth part should be subject to its proportionate share of the debts, the legacies and annuities of the deceased.

Article third provided that should the one half of the estate held in trust and with certain powers, by Henry Hilton, by reason of the failure of said Hilton or his successors or substitutes, to execute the same, or by operation of law or otherwise be vested in or distributed to any other person or persons than the heirs at law and next of kin of said Cornelia M. Stewart and in any other proportions or. portions than such as the law provided for in cases of intestacy, then and thereupon the parties to this agreement would convey, transfer, and confirm such undivided half to the persons who are heirs at law and next of kin, so that the same might be had and held by them

as if the said Cornelia M. Stewart had died intestate in respect to the same.

Article four provided that the stipulations and provisions of the agreement should be applicable to and binding upon, not only in favor of and against the parties thereto but likewise their respective heirs, personal representatives, assigns, and successors in interest.

And the parties agreed to do any act necessary to carry out this agreement.

The interest in the estate of the parties to this agreement as next of kin and heirs at law, was four fifths.

Upon the production of this agreement, the question was suggested by the Surrogate whether or not by reason thereof, having in view the provisions of the will, the parties thereto had not by signing the same forfeited their legacies under the will, and the question arose therefore, whether the witness had not become a hostile party to the will, and incompetent to testify as to transactions with the deceased.

The clause under which it was suggested that the witness might have forfeited her legacy was the seventh clause of the first codicil, which was as follows:—

"Seventh: For the purpose of making my said Will and this Codicil final, effectual and conclusive upon all my heirs, legatees and next of kin, I do hereby declare, that if any heir, next of kin or legatee named or not named in said will or this codicil, shall directly or indirectly institute or become an acting party to any proceeding to set aside, interfere with

or make null any provisions of said Will or this Codicil, such act or proceeding shall operate and be effectual as a release of all claim on the part of such heir, next of kin or legatee to any part of my property or estate, and any provision of my will in favor of such party I do hereby abrogate, annul and make void. And to the same end I do further declare that my heirs and next of kin shall under no circumstances be entitled to any other or greater interest in my Estate than is here given in and by my said will."

The question presented was exhaustively argued during several days by the respective counsel, and the Surrogate then delivered the opinion, partly oral and partly written, here given.

Joseph H. Choate *and* Treadwell Cleveland, *of counsel for petitioner.*

Leslie W. Russell, (Elihu Root, *of counsel,*) *for* Henry Hilton, *executor.*

Horace Russell, (Daniel G. Rollins, *of counsel,*) *for* Charles J. Clinch, *executor.*

William T. Gilbert, ( Jasper W. Gilbert *and* Stephen P. Nash, *of counsel,*) *for the* Cathedral of the Incarnation.

Martin & Smith, (Michael W. Divine *and* Frederick R. Coudert *of counsel,*) *for* Sarah N. Smith, Bessie S. White, Ella B. Smith, Kate A. Wetherell *and* Louise N. Osborne.

Shipman, Barlow, Larocque & Choate, (Wm. G. Choate, *of counsel,*) *for* Anna C. Clinch, Julia A. Clinch, Emma Clinch, Lilian L. Swan, Helen C. Butler, Maxwell E. Butler *and* Virginia Butler.

James C. Smith, *in person.*

Pinney & Sterling, *for* Cornelia Stewart Butler.

Geo. M. Pinney, Jr., *special guardian, for* Lawrence S. Butler *and* Charles S. Butler.

Thomas T. Sherman, *for* Prescott Hall Butler.

THE SURROGATE.—The importance of the question which must be decided now and which has been so ably argued on both sides, with the extraordinary and unusual amount of industry which has been employed by both sides in attempts to ascertain the true rule which governs the rights of the parties here, can hardly be magnified, because it reaches beyond the mere question of evidence—is whether Mrs. Wetherell shall be held qualified, or not, as a mere matter of evidence. It not only has been said by her distinguished counsel, but it is obvious to me, that it may be quite material to her. I have not heard her declare, because, perhaps she has had no opportunity to make such a declaration, what her own private wishes ever were or are now, in regard to the admission of this will to probate; but I have heard her father declare in the most emphatic terms that it was his wish now, and always had been his wish—it was now and always had been his belief—that the will of Mrs. Stewart was a valid instrument, and ought not to be set aside, and that he had no part or lot in any proceeding of any kind, at least, he had never intended to have, to set it aside. However that may be, it seems clear to my mind that it can have no influence at all upon the ruling which must be made on the question submitted. I am gratified that the examination which I myself have made with a good deal of care of this question, and have reduced to a memorandum on some sheets of paper here what my notions are on the question, has anticipated all the suggestions that have been made by counsel on the respective sides to-day, as I think will be observed when I shall

read what I have written.   Of course, I need not say
that I have written down the result of my own exam-
ination tentatively, expecting that not unlikely I
should be reasoned out of every position I had taken
and every conclusion that I had reached; and so I
have listened with edification to the very long argu-
ments from gentlemen who never make any other
than able ones.   But I am bound to say that I see no
reason now, after the help that I get from the argu-
ments, to change my views as I have recorded them.
I was attracted rather intensely to an admission made
by the counsel for Mrs. Wetherell in his argument, to
the effect that, in his view, the condition contained in
the seventh paragraph of the first codicil, which is
called the *in terrorem* clause, is valid, and one that
the testatrix had a right to annex to the legacy.   I
had not supposed from my examination, that the gen-
tlemen on the contestants' side of this case (and I
don't know that I should rank Mrs. Wetherell, cer-
tainly not as of record, upon the contestants' side),
but that the gentlemen on the side supporting the
witness, and arguing for her qualification, would ad-
mit the validity of that condition.   Judge Choate
distinctly repudiates that notion, and so does Mr.
Cleveland.   We have then, the interesting and rather
novel condition of the lady's counsel, speaking for
her, admitting the validity of the condition which she,
it is said, has violated, and if it be true that she has,
as a matter of law, violated that condition, she stands
here admitting that she has lost her rights under the
will.   It is conceded, and, whilst these preliminary
remarks may be apparently repeated in substance,

still they are remarks which come to me from the argument which has been made to-day, and I desire to make them preliminarily—it is admitted (although not expressly in his argument) by Judge Choate that, if there had been a gift over, then the condition would be valid; that there being no gift over, the condition is invalid. He would undoubtedly have admitted that if this benefaction, or a benefaction under this will, to Mrs. Wetherell, had been of real estate, or of an interest therein, then the condition as it reads, without any gift over whatever would have been valid. And I should have been glad to have heard him define to me what reason there can be, in law or sense, for a distinction between a condition valid as to a devise of real estate and the same words of condition invalid as to a bequest of personal property. From my reading of this agreement it seems to me that it might be plausibly argued that the legacy to Mrs. Wetherell, although personalty, the benefaction to her, her interests, her rights under the will, are beyond the mere legacy, and it includes and involves her rights in real estate, because a residuary half of this estate, after the necessary expenditure on the Cathedral, may, the entire body of it, go to her, and that must necessarily include an interest in real estate. And if that be true, then there is no question but that this condition in the seventh paragraph of this codicil is valid as to that, under the English rule. And again, in that same connection, is the language of the seventh clause, which is so familiar to all that perhaps I need not read it, or any part of it, but for the sake of greater certainty for the point that I make, I will read a few

words.   Mrs. Stewart says:  "Such act or proceeding
shall operate and be effectual as a release of all claim
on the part of such heir, next of kin, or legatee, to
any part of my property or estate, and any provision
of my will in favor of such party I do hereby abrogate,
annul, and make void."   Well, it occurs to me, and
has all along the examination of this question and
during the argument, whether a gift over must neces-
sarily be found in such a condition in express words;
whether you may not look for the gift over by direct
implication and necessary and obvious inference from
the words used.   And, if so, the point is suggested to
my mind, whether under this clause such benefaction
under this will as to a legatee, or a person receiving
something under it, shall go in case of a violation of
this condition to the residuary estate ; and is not that
what is clearly to be implied and inferred from the
condition itself, and would that be a gift over and
thus make the condition valid without regard to the
use of express words to define such gift ?

I now come to the examination I made of the
question and reduced to writing.

Mrs. Wetherell is a legatee named in the will, and
by its provisions is entitled to receive a legacy of
$200,000.   By her answer in this proceeding she
affirms the will and codicils and ranges herself on the
side of the proponents, who have duly proved the
will and procured a decree from this court admitting
it to probate, and which it is now sought to annul as
provided by statute.   The legal consequence of the
petition is to compel the proponents to again establish
the due execution of the will by a competent testatrix

at the time of its execution, without fraud or undue influence. Mrs. Wetherell is put upon the stand by the contestants, and sworn as a witness for them, to sustain their contention that the will was obtained by fraud and undue influence. Upon a question being propounded to her by the contestant's counsel, which calls for an answer that will disclose a personal communication to her from the testatrix, it is objected by the proponents' counsel that she is disqualified by section 829 of the Code, which forbids that a party shall be examined as a witness in his own behalf or interest concerning a personal transaction or communication between the witness and the deceased person. Examination by counsel for the proponent of the witness on her *voir dire* discloses the fact that Mrs. Wetherell entered into an agreement in writing several months after the commencement of this proceeding and after the filing by her of her answer herein, and which agreement is in evidence, dated May 21, 1888, with several persons, heirs at law and next of kin and legatees of the testatrix, with the door left open for the admission of the petitioner at any time she chooses to come in, which agreement relates to the rights of the parties thereto severally under the will.

It is claimed by the proponents' counsel that the effect of this agreement in law is to disqualify Mrs. Wetherell as a witness in regard to any personal communication with the testatrix, and hence the objection.

By the seventh article of the first codicil the testatrix expressed in plain language her intention that as a condition to the payment of this legacy to Mrs.

Wetherell she should not, directly or indirectly, institute or become an acting party to any proceeding to set aside, " interfere with " or make null, any provision of the will or the codicils, and that any such act or proceeding by her should deprive her of the legacy, the provision for which the testatrix, in such contingency, abrogated, annulled and made void.

First—Has Mrs. Wetherell violated this condition of the will?

Second—Is this condition valid?

Disregarding this condition, the petitioner, a legatee, has on her own petition, instituted this proceeding to revoke the probate of the will, and the effect of her action, if she succeeds, will be to " *set aside, interfere with and make null* " its provision.    Under the pleadings herein Mrs. Wetherell sustains the will, and hence is not disqualified as a witness under the section of the Code referred to, to be examined as a witness in aid of the contest, because any testimony she might give of personal communications with the testatrix would not be in her own behalf or interest. Her answer under her own oath, discloses that in her view the legacy to her was not bequeathed by an incompetent testatrix, nor by one unduly influenced, nor by one under restraint or the victim of fraud, but, on the contrary, it was the voluntary, free, unrestrained act of a person competent to make a will. She, also, in her answer by words apt for that purpose, affirms the same thing in regard to all other provisions of the will.

Several months after this contest had actually begun, and much testimony had been given, Mrs. Weth-

erell and other legatees and heirs at law entered into the written agreement of May 21, 1888, the object of which is stated to be in the agreement itself as follows: " Of avoiding, as far as may be, any controversy, or occasion of controversy, between themselves in relation to any of the property or estate which the said Cornelia M. Stewart at the time of her death was possessed of or in any way entitled to." This agreement was secret, unknown to the leading counsel for the petitioner until the day its existence was discovered on the examination in court here of one of the parties thereto, the sister of Mrs. Wetherell, and also a legatee for the same amount. It seems certain to me that in order to procure the testimony of Mrs. Wetherell in aid of the petitioner's cause, to wit, the setting aside, interfering with and making null the will of Mrs. Stewart, this agreement of intended indemnity was executed, and its obvious purpose was to assure to Mrs. Wetherell the full amount of her legacy if the will was " set aside " and, therefore, any pecuniary interest she had in sustaining the will became perfectly protected, and the interest she had grounded on her natural sympathies for the petitioner and her advisers and friends, her love and esteem for her and for them might then be safely manifested. The question as to the effect of this agreement upon Mrs. Wetherell's right to receive her legacy in the event that the will is sustained in this proceeding, seems to be the test of her qualification as a witness. Has she, *directly*, or *indirectly*, instituted any proceeding to set aside, interfere with or make null any provision of the will, or has she directly or indirectly become

an acting party for such purpose? If she has, then she may have forfeited or waived her legacy, and her only interest is in setting the will aside, as it is very plain she can receive nothing under the agreement unless the will is set aside. And by the will I mean always the will and the codicils thereto.

In this connection we perceive the hidden meaning of this agreement, its real purpose, as it seems to me, namely the pooling by all of their interests, with a perfect scheme of mutual protection in any emergency, and for the attempted evasion of the statute now invoked, and also to defeat the condition imposed by the testatrix, as stated in the seventh article of the first codicil.

This plain intent of this agreement is to unite all the signers, legatees, heirs at law, and next of kin, under the name of Rosalie Butler, in aid of the pending proceeding to set aside the will. To my mind it is perfectly plain that this proceeding was really instituted by Rosalie Butler in behalf of herself and the signers of this agreement and the evidence of that fact is the agreement itself. At the date of the agreement the parties thereto became acting parties to this proceeding to set aside and make null the will, and whether they were directly or indirectly acting is not material to decide. They certainly did one or the other. Hence, we must ascertain the legal effect of article seven of the first codicil upon the rights of these persons in the event that this will is sustained. The third article of the agreement was intended to bind all the parties to an utter disregard of the trust to Hilton and his successors, so far as any benefits

might come to them or either of them, by the execution of the trust. This article is equivalent to a release by the signers who are not heirs at law and next of kin of the testatrix, of any benefits they may ever be entitled to receive under the terms of the trust, by the exercise in their favor of the discretion vested in the trustee, and, further, a binding agreement on their part to pay over to the heirs at law and next of kin any sums they might receive from the trustee. The scheme of this article is that the residuary half of the estate devised to Hilton in trust shall go to the heirs at law and next of kin as in case of intestacy, and, at least, to the entire extent of any benefits any or either of these persons, whether heirs at law and next of kin or not, coming to them from the trustees, they repudiate the trust and become parties to a proceeding to make null the trust provision of the will, or, at least, " to interfere " with that provision ; and thus they violate the condition of the seventh article of the first codicil.

The legal effect of this agreement upon the persons who executed it is the relinquishment by them of all their rights dependent upon any of the provisions of the will. They have elected to disregard the will. In legal effect they refuse to accept the benefactions bestowed upon them, preferring rather to rely upon this agreement.

It is a fundamental principle that no one is allowed to dispute a will under which he takes a benefit. The rule in England, cannot, it seems to me, be regarded as settled yet as to conditions against disputing a will. The doctrine of many cases there may seem fairly to

establish the rule that the condition of not disputing a will by a legatee is to be regarded as *in terrorem* only unless there be a gift over. But such does not seem to me to be the rule in this country. Any reason for the distinction made between bequests and devises I am unable to adopt as substantial, nor have I been able to find any American authorities approving the English rule if, indeed, we may say there is a rule, on the subject in that country. American authorities the other way can be multiplied, and they are to be found in the decisions of the courts of last resort in several states. The rule in Canada seems to be settled in favor of upholding the legality of such a condition annexed to a bequest. A standard authority in this country enlightens me as to the true rule. I quote from Judge REDFIELD on the Law of Wills (3d ed.), vol. 2, page 298—and this quotation contains what I commit myself to, as the rule in America upon this subject. He says: "The rule of the English law as to conditions against disputing the will, annexed to some bequests, seems to be in a most absurd state of confusion. It is held that such a condition is void as to personalty unless the legacy be given over in the event of failure to perform the condition; but that such a condition is entirely valid as to real estate, whether there be any gift over or not. And it is agreed that there is no substantial ground for any distinction in this respect between real and personal estate; hence, we assume that in this country any such condition which is reasonable, as one against disputing one's will surely is, as nothing can be more in conformity to good policy than to prevent litigation,

will be held binding and valid.   And, as before stated, a condition avoiding the bequest upon the donee becoming a nun is valid and will be enforced."

That quotation is precisely accurate from Judge REDFIELD'S work on the Law of Wills.

I conclude, therefore, that Mrs. Wetherell, by her agreement of May 21, 1888, has deprived herself of her legacy, in the event the will is sustained, and, therefore, her interest lies with the contestants and not with the proponents.   I hold that she cannot be examined as a witness concerning a personal transaction or communication between her and the testatrix.

NOTE.—The earlier authorities on the question of the validity of a condition in a will imposing the forfeiture of a legacy or devise as a penalty for contesting a will, are to be found in a note at 60 *Amer. Dec.* 113 (to the report of the case of Mallet v. Smith, 6 *Rich. Eq.* 12).   See also in addition to the authorities cited in that note, Donegan v. Ward, 70 *Ala.* 501; 3 *Amer. Prob. Rep.* 206; Jackson v. Westerfield, 61 *How.* 399; Fredericks v. Gray, 10 *Serg. & R.* 182; Chew's Appeal, 45 *Pa. St.* 228; Shivers v. Goar, 40 *Ga.* 676; Heyde v. Baldwin, 17 *Pick.* 303; Thompson v. Gaunt, 14 *Lea*, 310; Hoit v. Hoit, 42 *N. J. Eq.* 388; 59 *Amer. Rep.* 43.   An action which is not to defeat the intention of the testator, but to obtain an adjudication as to what that intention really was, is not a cause of forfeiture under such a condition in a will.   Woodward v. James, 44 *Hun*, 95, modifying 16 *Abb. N. C.* 246.