SARAH D. CHANNEL ET AL.

v.

HENRY CAPEN, ADMINISTRATOR, ETC., ET AL.

*Distribution of Personal Estate—Construction of Statute—Situs of Personal Property—Of Choses in Action—Place of Residence of Intestate.*

1. At common law the distribution of personal property, wherever situated, is governed by the law of the country of the intestate's domicile at the time of his death; but under the statute of this State, personal property " in this State " of persons dying intestate, is to be distributed according to the law of this State, whatever the law of the domicile of the deceased.

2. The phrase of the statute " in this State," means only such property as is physically, actually here, and here for some continuous and definite period.

3. A promissory note is merely evidence of a right, which is wholly intangible and can not be regarded as situated anywhere of itself, but resides with its owner. Promissory notes left in this State with an agent by a non-resident, for the purpose of safekeeping and for collection while the owner is traveling, are not to be regarded as personal property " in this State," but the property is located with the owner.

4. Where a person has a residence in a certain place and leaves that place permanently, with the intent of locating in another place, but dies before the intent of making such new location is carried into effect, the domicile of such person is to be considered at the first named place.

[Opinion filed April 11, 1892.]

APPEAL from the Circuit Court of McLean County; the Hon. THOMAS F. TIPTON, Judge, presiding.

Messrs. PHILLIPS & PORTER, RUNNELLS & BURRY and C. RAYBURN, for appellant.

Messrs. KERRICK, LUCAS & SPENCER, for appellee.

MR. JUSTICE WALL. This was an appeal from an order of distribution of the personal estate of Cordelia T. Cooper,

deceased, made in the Circuit Court upon an appeal from the order of the County Court. The said Cordelia T. Cooper died intestate, in the city of Cincinnati, Ohio, August 4, 1888, leaving an estate of some $15,000, consisting of promissory notes secured by real estate mortgages, executed by residents of McLean County, Illinois. She left surviving, her husband, Edward T. Cooper, no children or descendants of children, but nephews and nieces and descendants of deceased nephews and nieces. The controversy is as to the distribution of this estate, the husband claiming it under the law of descent of Illinois and the next of kin claiming it under the law of descent of Missouri. The Circuit Court held that the distribution should be according to the law of this State and that the husband was entitled to the whole after payment of debts and cost of administration. It appears that deceased had lived for many years at Bloomington, in said McLean County, the wife and widow of a Mr. Townshend, who had there died and was buried in the cemetery there located. She had considerable property, consisting of real estate in Bloomington and money loaned on real estate security. On the 28th of April, 1881, she was married to Mr. Cooper, a Presbyterian minister, who was then a resident of Cincinnati and engaged as a writer for a religious paper published in that city. Mr. and Mrs. Cooper resided there three or four years, living in a rented house, and then they went to St. Louis, Mo., where he was engaged in editorial work on the *Evangelist*, a Presbyterian paper published in that city, he having some pecuniary interest in the paper as a stockholder. They remained in St. Louis some three years or more, during which time they lived at a boarding house, in rooms furnished by themselves.

In the spring of 1888, Mr. Cooper sold his interest in the *Evangelist* and severed his connection with it but remained in St. Louis, preaching in various localities though having no regular work in charge, until about July 1, 1888, when he and Mrs. Cooper went to Cincinnati, where they remained until her death. The immediate cause of their leaving St. Louis and going to Cincinnati was the condition of her

health. She had an affliction of the eyes rendering her nearly blind. Their purpose was to have her eyes treated in Cincinnati, an operation being necessary, and after that to spend the summer at the eastern sea shore. When leaving St. Louis they sold some of their furniture and some remaining unsold was stored there. After her death Mr. Cooper returned to St. Louis and was again professionally engaged there. It appears that after the marriage Mrs. Cooper sold all her real estate in Bloomington and converted it into money, keeping the proceeds, as well as what she had before invested in loans secured upon real estate in that vicinity. These investments were managed for her by Henry Capen, who is the administrator, and it would seem that he usually represented her in these business matters, making collections, new loans, etc. As Mr. and Mrs. Cooper were about leaving St. Louis, Mr. Cooper wrote Mr. Capen, saying they expected " to leave very soon for an indefinite period," during which they wished to place in his hands the papers belonging to her, " for safe keeping and collection;" that they were going first to Cincinnati, in the hope of restoring her vision by removing the cataract from one eye, after which they would go to the sea shore in New Jersey, and that they could easily keep in communication with him while intrusting these matters to his care. On the 18th of July Mr. Cooper again wrote to Mr. Capen, advising him of the successful result of the operation on one eye; that the operation on the other would be deferred three or four months, and that in the meantime their address would be Perth Amboy, New Jersey; that they expected to start east in a few days and that he had sent him by express the notes and mortgages, giving a list of them and requesting him to " collect as claims mature and remit as advised, and retain papers for safe keeping until otherwise advised." These notes and mortgages were sent accordingly and were duly received by Mr. Capen, in whose possession they were when Mrs. Cooper died about two weeks after they were so sent. She was buried in the Bloomington cemetery, beside the remains of her first husband, pursuant to her request

and long settled purpose, and shortly afterward upon the suggestion and application of Mr. Cooper, letters of administration were issued to Mr. Capen, who proceeded in the usual way to settle the estate.

When the proper time for distribution arrived the next of kin filed their petition, claiming the entire amount in accordance with the law of Missouri, which would in such case award the personal estate to the next of kin in preference to the husband. The demand thus made was based upon the proposition that the last domicile of the deceased was in the State of Missouri, where, of right, the principal administration should have been, and that the administration in this State should be regarded as merely auxiliary or ancillary, and upon the further proposition that when the estate so administered here was ready for distribution the law of the domicile should prevail in determining the proper distributees.

It is well settled that by the common law the "distribution of personal property, wherever situated, is governed by the law of the country of the intestate's domicile at the time of his death, and not by the conflicting laws of the various places where the goods happen to be situated." 2 Kent Com. Sec. 429; Russell v. Madden, 95 Ill. 485; Young v. Wittenmyre, 123 Ill. 303.

It is important, then, to inquire whether our statute has made any change in this respect. It provides, Chap. 39, Sec. 1:

"That estates, both real and personal, of residents and non-resident proprietors in this State, dying intestate, or whose estate or any part thereof shall be deemed and taken as intestate estate, after all just debts and claims against such estate are fully paid, shall descend to and be distributed in manner following, to-wit: * * * 3d. When there is a widow, or surviving husband, and no child or children, or descendants of a child or children of the intestate, then, after the payment of all just debts, one-half of the real estate and the whole of the personal estate shall descend to such widow or surviving husband as an absolute estate for-

ever, and the other half of the real estate shall descend as
in other cases where there is no child or children, or descend-
ants of child or children." Assuming, as both sides do,
that the words "in this State" are intended to refer to and
qualify "estates," and do not refer to the place where the
owner thereof may die intestate, they clearly refer to per-
sonal as well as real property, and then the question is,
when may personal property be regarded as "in this State,"
within the meaning of the statute, or rather, was the prop-
erty here involved to be so regarded, if, as claimed, Mrs.
Cooper's domicile was in Missouri at the time of her death?
We have been referred to no adjudication by our Supreme
Court, tending to settle the point.

The first statute of descent enacted in Illinois was ap-
proved March 29, 1819. It declared "that the estates, both
of resident and non-resident proprietors in this State, dying
intestate, shall descend," etc., the provision being copied
substantially from the ordinance of 1787. So the law re-
mained until the act of January 23, 1829, relative to wills,
testaments, etc., by Section 43 of which it was provided
that "estates, both real and personal, of resident or non-
resident proprietors in this State, dying intestate," etc., etc.
The same provision is found in the revision of 1845, Sec. 46
of the chapter on Wills. The present provision was enacted
April 9, 1872. It was, of course, clearly within the legis-
lative power to change the rule of the common law on this
subject, but in view of the reasons upon which the rule was
based, we are not to presume the legislature intended to
change it, except so far as the intention is clearly mani-
fested. However much of fiction there may have been in
the rule as to chattels, there was none as to choses in action.
With respect to them it is essentially true that they follow
the owner. The property therein is not the mere promis-
sory note, but it is the right to demand and have a sum of
money from the debtor. The promissory note is merely
evidence of the right, which is wholly intangible, and can
not be regarded as situated anywhere of itself; it resides
always in the owner. Story on Conflict of Laws, Sec. 362;

State Tax Case, 15 Wallace, 300; Murray v. Charleston, 96 U. S. 432.

The Supreme Court of Mississippi had occasion to construe a statutory provision of that State, reading as follows : " All personal property situated in this State shall descend and be distributed according to the laws of this State regulating the descent of such property, regardless of all material rights which may have accrued in other States, and notwithstanding the domicile of the deceased may have been in another State, and whether the heirs, or persons entitled to distribution be in this State or not; and the widow of such deceased person shall take her share of the personal estate, according to the laws of this State."

The court held, in effect, that in order to bring choses in action within the meaning of this provision, when owned by a non-resident, it should appear that they were in some way substantially connected with business conducted in the State, saying: " The rule that such property has its *situs* at the domicile of the owner is universally recognized, and may be said to be as well established as if declared by positive statute, and we are unwilling to hold it to be abrogated by implication." Speed v. Kelly, 59 Miss. 47; Jahier v. Rasco, 62 Miss. 699. Under the peculiar facts of the latter case the court felt bound to hold that the property evidenced by the promissory notes, etc., was so far incorporated with the business of the State, having also been there listed for taxation, as to be within the statute.

We are inclined to apply similar considerations in the construction of our statute. If it is intended to provide that all personal estates being within this State shall be distributed, etc., we think it must mean only such property as is physically, actually here, and here also for some continuous and definite period. It would not include property merely in transit, nor securities deposited merely for safe keeping for an indefinite period. The property must actually be in the State. In this instance the property, that is the right to have payment, was not in this State if the owner's domicile was not here. The notes were not listed

for taxation and never had been—nor had any of the funds
from whence they were derived—nor were they in any way
incorporated with the mass of property in the State. It is
evident they were placed in the hands of the agent for a mere
temporary purpose: that is, collection as they matured, and
safe keeping while the owner was traveling. The mere fact
that they were here in the hands of an agent for collection
is not important. Suppose a creditor residing in another
State should himself come here bringing the notes of his
debtor residing here for the purpose of collecting or selling
or without any particular purpose in regard thereto, or for
the sake of having them with him, and should die while
here, and while so having them in his possession, would any
one say the property evidenced by the notes was "in this
State," within the meaning of the statute? We would not
so regard it. The attitude of the present case is not differ-
ent from that of the case supposed, unless it can be said
that the domicile of Mrs. Cooper was in Illinois at the time
of her death.

Where, then, was her domicile? The domicile of the hus-
band is the domicile of the wife while they are living together
in the conjugal relation. When she married Mr. Cooper and
went with him to Cincinnati, she necessarily abandoned the
domicile she had previously held at Bloomington, and when
she went with him to St. Louis it was again changed. It
was never changed from St. Louis. In legal contemplation
it there remained for the reason that while it was the pur-
pose not to return there, and while it may have been the
intention to finally make a home in Illinois, that purpose
was not carried out. In Hager v. Hager, 74 Ill. 312, it was
said: "To effect a change of domicile there must be an actual
abandonment of the first domicile coupled with the inten-
tion not to return to it, and there must be a new domicile
acquired by actual residence within another jurisdiction
coupled with the intention of making the last acquired resi-
dence a permanent home." No such acquisition appears in
the present case after the parties settled in St. Louis. We
need not determine whether it was competent for Mr. Cooper

to testify as to the declarations of his wife or to the conversations between them on this subject. Assuming, though not conceding, such evidence was legally competent, and that it truly shows the purpose they had in view, still there is lacking the proof that this purpose was ever effected. It was not effected by sending the notes and mortgages to Mr. Capen for collection and safe keeping, nor is the fact that she desired to be buried and was buried in the Bloomington cemetery sufficient.

Counsel for appellee have cited authorities to sustain the proposition that as the debtors resided in Illinois, it was proper there to take out letters of administration. We do not question the position thus taken. These debts were assets for administration, *bona notabilia*, there, but unless the domicile of the owner was there also, such administration would be ancillary only. The question of distribution would not be thereby involved or determined.

We are of opinion, then, upon the whole case, that the *situs* of this property, so far as distribution is concerned, was not in Illinois but in Missouri. The order of the Circuit Court will therefore be reversed and the cause will be remanded with directions to distribute the net proceeds of the personal estate according to the rules of descent of the latter State.

