(Surrogate's Court, New York County. September, 1903.)

1. SURROGATE'S COURT—JURISDICTION.
   The Surrogate's Court has jurisdiction to admit to probate the will of a foreign testator where he left real and personal property in the county.

2. DESCENT OF PERSONALTY.
   Under Code Civ. Proc. § 2694, providing that, except where other disposition is made by will, personal property in the state will descend according to the laws of the state or country of which decedent was a resident at the time of his death, where a foreigner was a resident of the republic of Switzerland, distribution of his property was governed by the law of his domicile.

3. DESCENT OF REALTY.
   Real property within the state passes under the provisions of a will of a foreign testator.

4. WILLS—PROVISIONS.
   A provision in a will, defeating legacies therein if the will is contested, is valid.

In the Matter of the Estate of George Barandon. Proceedings on the judicial settlement of the executor's account. Decree rendered.

George Finck, for executor.
Robert A. Paddock, for Johanna Barandon.
Lord, Day & Lord, for village of Feldis.

THOMAS, S. The decree admitting the will to probate does not establish conclusively, for the purpose of determining the rights

¶ 2. See Descent and Distribution, vol. 16, Cent. Dig. § 19.

of the parties on the distribution of the estate, that the testator was at the time of his death a resident of the county and state of New York. One reason for this is that the principal legatee, the village of Feldis, was not a party to the probate proceeding, and can neither be estopped nor benefited by that decree. Concha v. Concha, 11 App. Cas. 541, cited with approval in Overby v. Gordon, 177 U. S. 214, 20 Sup. Ct. 603, 44 L. Ed. 741. No finding of fact of the residence of the testator was made on the probate, nor is any recital as to residence contained in the decree. It appeared from the will itself, and the fact is, that the testator owned real property in this state and county. It is also conceded that he left personalty in this county. The jurisdiction of the surrogate to admit the will to probate can safely rest on either of these facts, and, for the purpose of establishing jurisdiction, the question of the place of domicile of the testator was not important.

The finding and determination of the Swiss courts, to the effect that the decedent was a resident of Switzerland at the time of his death, was made in a judicial proceeding to which all of his heirs and next of kin were parties. The evidence on the subject taken before me leads to the same result. I will find, as a fact, that the testator was a resident of the canton of Graubunden, in the republic of Switzerland.

The passbooks for the moneys due to the testator from New York savings banks were stated on the argument before me to have been in Switzerland at the time of his death, and to have been given in Switzerland, by the person named in the will as the Swiss executor, to the New York executor, who brought them into this jurisdiction and collected the money. For this act the Swiss next of kin have obtained judgments against the Swiss executor, the Swiss courts having determined that the will is void under the Swiss law because of lack of due execution. The situs of these assets was not in this state, but in Switzerland, the domicile of the decedent, and the place where the vouchers were upon production of which alone they could be turned into money. The money thus obtained must be paid to the persons who obtained Swiss judgments therefor, in the proportions established by their judgments, on their crediting the amounts paid them on such judgments. No deduction from this amount will be made for any expense of administration, except only the commission of the executors at 1 per cent., which will represent the cost of collection. Unless the facts concerning these assets are conceded, or can be found in the voluminous record, further proof may be taken by either party, and, in the meantime, these observations may be regarded as not a final expression of my conclusion.

As to the other personalty of the testator, the situs of which was in this state at the time of his death, it must pass in accordance with the Swiss law, subject, however, to the payment of debts and to all proper expenses of administration. It is well established that the law of the domicile of a decedent governs the distribution of his personal property, whether to heirs, distributees, or legatees. Chamberlain v. Chamberlain, 43 N. Y. 424, 432, 433; Cross v. United States Trust Co., 131 N. Y. 330, 30 N. E. 125, 15 L. R. A. 606, 27 Am. St. Rep.

597; Matter of Dunn, 39 App. Div. 510, 57 N. Y. Supp. 444; Harvey v. Richards, 1 Mason, 381, 402, Fed. Cas. No. 6,184; Russell v. Madden, 95 Ill. 485, 491; Ordronaux v. Helie, 3 Sandf. Ch. 512. This principle has been enacted by our Legislature into statute, in section 2694 of the Code of Civil Procedure, as follows:

"Except where special provision is otherwise made by law, the validity and effect of a testamentary disposition of any other property (i. e., other than real property) situated within the state, and the ownership and disposition of such property, where it is not disposed of by will, are regulated by the laws of the state or country, of which the decedent was a resident, at the time of his death."

The real property within this state passes under the will and is controlled by our law. The power to sell for the purpose of paying legacies is valid. When so sold, the proceeds become assets for the payment of debts and expenses of administration, and any deficiency of personalty for such purposes may be supplied from such proceeds. Matter of Bolton, 146 N. Y. 257, 40 N. E. 737; Cahill v. Russell, 140 N. Y. 402, 35 N. E. 664. The doctrine of equitable conversion cannot be invoked to require the proceeds of such sale to be treated as personalty at the time of the death of the testator, and therefore to pass to the persons claiming against the will and as heirs at law. The equities that required the conversion were the equities of the persons for whose benefit the sale was directed, and the sale was lawful only in order to satisfy their claims. So far as all other persons are concerned, there was no equitable conversion. The proceeds of the sale will therefore be paid pursuant to the directions and wish of the testator as set forth in his will.

The Gemeinde Feldis is shown to be qualified under the Swiss law to take the legacies given to it.

The eleventh clause of the will contains the following provision:

"In case this my last will shall ever be contested in the Canton of Graubunden, or called in question there in any of its provisions, then I direct (according to paragr. 509 of the Civil Law of the Canton of Graubunden) that each and all of my heirs at law be strictly limited to the Notherbeurecht; and that my entire estate, both real and personal, be given to the Gemeinde Feldis," etc.

Though conditions whereby legacies are defeated by contesting the validity of the will in which they are contained are not favored and are strictly construed, they are valid. Rank v. Camp, 3 Dem. Sur. 278; In re Grote's Estate, 2 How. Prac. (N. S.) 140; Bryant v. Thompson, 59 Hun, 545, 14 N. Y. Supp. 28; Matter of Stewart, 1 Con. Sur. 412, 5 N. Y. Supp. 32; Woodward v. James, 44 Hun, 95; Matter of Jackson's Will (Sur.) 20 N. Y. Supp. 380; Donegan v. Wade, 70 Ala. 501; 3 Am. Pro. Rep. 206. All of the legatees named in the will, except the Gemeinde Feldis, were heirs at law and next of kin of the testator, and as such were active contestants of the will, and were moving parties to the proceeding in the Swiss courts, in which they succeeded in having the will declared void under the Swiss law. They have therefore elected to forfeit any claim under the will, and are entitled only to the benefits accruing to them because of the invalidity of the paper as a will of personalty. Treated as a will of real property, the

will is to be construed and enforced solely by our law, and the rights of "Notherbeurecht" reserved by the Swiss law to heirs at law can receive no recognition. The entire proceeds of the real property, after the payment of debts and expenses of administration, will therefore be paid to the Gemeinde Feldis.

Decreed accordingly.