A formal adoption pursuant to statute must be assumed to be regular and complete, in the absence of a contrary showing.

[Ed. Note.—For other cases, see Adoption, Cent. Dig. §§ 22, 24, 25; Dec. Dig. § 14.*]

2. WILLS (§ 656*)—CONDITIONS SUBSEQUENT.

A gift to testator's daughter, on condition that she annul the adoption of a child thereafter adopted by her, was a gift upon a condition subsequent, and not a condition precedent.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1546–1550; Dec. Dig. § 656.*]

3. WILLS (§ 480*)—"GIFT."

A testamentary gift is merely the right of succession to the property of deceased, though in the strict legal sense there is no "gift" without delivery.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 1004; Dec. Dig. § 480.*

For other definitions, see Words and Phrases, vol. 4, pp. 3084–3087; vol. 8, p. 7670.]

4. ADOPTION (§ 3*)—COMMON LAW.

Adoption was unknown to the common law, and only exists by statute.

[Ed. Note.—For other cases, see Adoption, Cent. Dig. §§ 1, 2; Dec. Dig. § 3.*]

5. WILLS (§ 641*)—CONDITIONS SUBSEQUENT—INVALID CONDITIONS.
    A condition in a testamentary gift to an adoptive parent, requiring the parent to set aside the adoption of the child, is contrary to public policy and void.
    [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1525–1527; Dec. Dig. § 641.*]

6. WILLS (§ 654*)—CONDITIONS SUBSEQUENT—INVALID CONDITIONS.
    An invalid condition subsequent in a will is as though it had never been written therein, not affecting the will in any way.
    [Ed. Note.—For other cases, see Wills, Cent. Dig. § 1545; Dec. Dig. § 654.*]

7. WILLS (§ 642*)—GIFTS—PROPERTY GIVEN.
    What are termed "name and arms" clauses in wills are valid at common law.
    [Ed. Note.—For other cases, see Wills, Cent. Dig. § 1528; Dec. Dig. § 642.*]

8. WILLS (§ 665*)—VALIDITY—CONDITIONS—BREACH.
    Where a testamentary gift of testator's estate to his natural son was absolute, and there was no gift over upon failure to take testator's name, and no gift made dependent on the assumption of such name, and the son's estate was not made to endure only so long as he bore testator's name, with a gift over, testator's purpose to have his son bear his name could not be effectuated by the courts.
    [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1561–1569; Dec. Dig. § 665.*]

In the matter of proving the last will and testament of an anonymous deceased. Decree of probate as stated.

FOWLER, S. This is a case of construction sought in a proceeding for probate. The will is entitled to probate. Testator by his will bequeaths and devises one moiety of his residuary estate, both real and personal, to his executor on trusts for the benefit of his natural son, an infant under 14 years of age. The other moiety is bequeathed and devised by testator to his executor on trusts for the benefit of testator's legitimate daughter, who was then either a widow or a married woman. The remainders over are to the son and daughter, or failing them, to issue.

It appears by the will that the unnatural mother of the infant son had abandoned him, or surrendered or committed the child to his natural father, and that thereafter she had married some one other than the child's father and disappeared. The son was baptized a Catholic, and in baptism received the name of his natural or de facto father. In this situation testator's daughter, without her father's knowledge or consent, formally adopted the infant as her own, and she gave him her husband's name. It is stated in the will that this adoption was pursuant to the law of this state. Whether the daughter was moved by compassion, affection, or religious scruples to adopt the natural son of her father does not appear. That such adoption was without her father's consent, and that he wishes the infant to

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

bear his name, does appear in his will. Testator's will nominates his daughter as the guardian of his infant son. In a separate clause of the will, quite distinct from the words of gift, testator provides, in substance, that such adoption of the infant son is to be undone within six months after testator's decease, unless undone before, and if testator's daughter fails to have rescinded and annulled and made void and of no force or effect the said adoption, or in any manner interferes or seeks to prevent the infant son's resumption of his baptismal name, then in that event any provision of the will in trust for her or otherwise shall be and become wholly void and of no effect, and immediately accrue to the benefit of the said infant son of testator. The will fails, however, to revoke the nomination of the daughter as the guardian of the infant. The validity of this appointment of the testamentary guardian has not been discussed and need not be considered.

[1, 2] The first question made on the will is: Are such provisions of the will valid or void? And next, if void: Does the daughter take free of the void conditions imposed on the different testamentary gifts to her? It is apparent to me that the adoption under the laws of this state must be assumed for the purposes of this cause to be regular and complete, as the maxim, "Omnia præsumuntur rite et solemniter esse acta donec probetur in contrarium," applies to any such judicial act of record. It establishes the relation of parent and child. It is also apparent to me that the clause of forfeiture of the testamentary gifts to the daughter, in trust or otherwise, is in the nature of a condition subsequent, and not precedent. Thus it is that the daughter's interests, both legal and equitable, are to be taken as vested.

[3] When I speak of testamentary "gifts," it is in accordance with common-law usage, although it is well known that there is in law no gift without delivery, and what is really meant by a "testamentary gift" is only the right of succession to property of the defunct. Counsel state that they are unable to find any precedent for this case exactly in point, and they cite none; but they argue that by analogy the condition imposed on the "gifts" to testator's daughter is void. I must consequently resolve for myself the questions presented for construction.

[4] It is perhaps not strange that we find no precise precedents for this matter either in the books of the common law or in this state, as it is familiar that adoption was unknown to the common law, and the status exists here only by virtue of modern statutes, modeled to some extent, in conception at least, on the "arrogation" and "adoption" long familiar to the civilians. The statute (section 114, Domestic Relations Law) prescribes the effect of adoption and creates the relation of parent and child, with all the duties and responsibilities attaching to such relation at common law. The adopting parent must bestow parental care on the adopted child, and while the relation of parent and child continues is to be held to all the parental obligations.

[5] A condition, in a gift to an adoptive parent, that such parent shall forfeit or annul or set aside the parental ties created by the law, or shall act toward the child in any way contrary to the nature of a mother is, I am convinced, contra legem and not to be contemplated for an instant. It cannot be otherwise. Such a conclusion is too obvious to need any citations of authority. But for abundant precaution we may resort to the analogies.

In all modern systems of law which I have examined "conditiones turpes" or immoral conditions, sometimes called "conditions against morality," are considered as not inserted in legacies or other testamentary gifts. Tomkins' & Jencken, Modern Roman Law of Holland, 225; 1 Troplong, Donations Des Testaments, 308; Pothier, Oeuvres, vol. 5, p. 503. This was so in the classical Roman law (D. 28, 7, 9), and is still so wherever the civil law obtains (article 900, Code Napoléon). Few other departments of the common law owe more to the civilians than does that concerning conditions. The common law governing legacies and testamentary gifts is also, in the main, but a transcription of the civil law. The application alone is new. 2 Jarman, Wills, 15; Spence, Eq. Jurisdic. 542; Scrutton, Roman Law and Law of England, 157, 158; Kerley, Hist. of Eq. 141.

The early common law concerning conditions will be found stated in Bracton, Coke, Sheppard's Touchstone, and Perkins' "Profitable Book." All these writers recognize that a condition to omit a duty or against the law, "contra legem," or public policy is void. Bracton, f. 19; Coke, 66a, 206a, 206b, 219a. And see Mr. Butler's note 99, Coke on Litt.; Sheppard's Touchstone, 132; Perkins, § 722. These writers in the main restate the Roman law, without much, if any, variation. Coke only is regarded as a source of the common law, but all are authoritative in that law. Nothing since has been added to our modern common law except the particular applications. Very late adjudications, both in England and with us, depend solely on these early commentators. In re Beard, [1908] 1 Ch. 383, 386. It is most apparent that the definitions and distinctions of the common law of conditions are, in the main, taken out of the civil law.

With this brief review of our existing law of conditions, we may next consider the modern application of the principles already announced. Mr. Viner, in his Abridgment, gives us the common-law cases in his day bearing on conditions against or contrary to law. 5 Viner, Abr. 99. That a condition contrary to the donee's duty or legal obligation, or contra bonos mores, is void, is there stated generally as it is in other adjudications now binding in this state. Lord Hardwicke in Earl of Chesterfield v. Jansen (A. D. 1750) 1 Atk. 130; Whiton v. Harmon, 54 Hun, 552, 555, 8 N. Y. Supp. 119; Wright v. Mayer, 47 App. Div. 604, 606, 62 N. Y. Supp. 610; Cruger v. Phelps, 21 Misc. Rep. 252, 265, 47 N. Y. Supp. 61; Potter v. McAlpine, 3 Dem. Sur. 108, 125; Matter of Haight, 51 App. Div. 310, 313, 64 N. Y. Supp. 1029. It is apparent to me from the authorities just cited that a condition annexed to a gift to a mother, whether adoptive or by nature, that she shall separate herself from her child, and sever the parental relation, and neglect her maternal duties to the child, is both

contrary to law and against public policy, and therefore to be taken as void. It makes no difference that in this case the child and its adoptive mother had the same father. In law the legitimate father of the daughter was not the father of the infant. The infant was nullius filius. The relation was what the common law terms "natural" and ignores.

[6] This being so, as the obnoxious condition is a condition subsequent, it is as if it had never been written in the will. Had this been a condition precedent, other principles of law might arise for our consideration. Taylor v. Mason, 9 Wheat. 325, 350, 6 L. Ed. 101. But it is a condition subsequent with which we are dealing, and the maxim of the Roman or civil law obtains:

"Conditiones contra leges vel contra bonos mores pro non scriptis habentur."

In other words, the condition subsequent in question, being contrary to law and public policy, is to be regarded as not written in the will. Whether an invalid condition ought in ethics to be taken as not written in a will or as invalidating the legacy itself is a very old dispute among lawyers. In classical times the Proculians contended that the Roman or civil law of legacies ought to be the same on this point as the Roman law of contracts, and the legacy void if the condition was void. But the School of the Sabinians triumphed on this point, and in the Roman law the legacy was absolute, and the invalid condition treated as if not contained in the will. Grotius, however, among the moderns, disputed the rightfulness of this conclusion. Manuel de la Jurisprudence de Hollande, v. 2, c. 18. The Code Napoléon followed the Roman law on this point (section 900):

"Dans toute disposition entre-vifs ou testamentaire, les conditions impossibles, celles qui seront contraires aux lois ou aux mœurs, seront réputées non écrites."

In so far as it concerns invalid conditions subsequent, the testamentary common law on this point accords with the Roman law, and the unlawful condition is ignored. Touchstone, 133; Moore v. Moore, 47 Barb. 257; Potter v. McAlpine, 3 Dem. Sur. 108; Whiton v. Harmon, 54 Hun, 553, 8 N. Y. Supp. 119; Matter of Haight, 51 App. Div. 310, 64 N. Y. Supp. 1029. I consequently hold that the condition subsequent in question is void, and the testamentary gifts, whether legal or equitable, to testator's daughter, are without restriction by reason of the obnoxious condition concerning the annulment of the adoption.

[7] There is one point left unnoticed by counsel on the argument, but which I cannot pass over. The testator in his will obviously desired his son to bear his name, and that was a fixed testamentary intention, almost an obsession on his part, which is not to be lightly regarded in this court. What are called "name and arms" clauses in wills or deeds of gift are entirely valid at common law; but the expression of a condition to bear testator's name, or arms, requires a high degree of technical skill or it will fail. In this respect this will before me is inartificially expressed.

[8] The estate to the son is absolute, and there is no gift over for

his failure to take testator's name; nor is the gift to the son made dependent on the infant's assumption of the testator's name; nor is his estate to endure so long only as he bears testator's name and then over to some one else. Under the circumstances there is no way for the surrogate to effectuate the testator's evident desire to have his son bear his name. Brooke, in Re Musgrave v. Brooke, 26 Ch. D. 792.

For the reasons expressed, I now hold, as already indicated, that the testamentary gifts to the testator's daughter, whether legal or equitable, are without restriction by reason of the condition discussed and sought to be imposed by the testator. The decree for probate may pass as sought, but with the construction accorded to the testamentary script as herein indicated.

Settle decree accordingly.