### In re KATHAN'S WILL.

(Surrogate's Court, New York County. May 5, 1913.)

1. WILLS (§ 641*)—DEVISES—CONDITIONS.

A testator may limit a devise or bequest upon any condition that is lawful.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1525–1527; Dec. Dig. § 641.*]

2. WILLS (§ 651*)—DEVISES—CONDITIONS.

While a testator may limit a devise upon any condition that is lawful, a condition that a devisee shall dispute no part of the will is not lawful, where used to sustain illegal devises or bequests, and so cannot be enforced.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 1542; Dec. Dig. § 651.*]

3. COURTS (§ 90*)—DECISIONS—STARE DECISIS.

The court is not always bound, under the principle of stare decisis, to follow decisions of a tribunal of only co-ordinate authority.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 313–321, 351; Dec. Dig. § 90.*]

4. WILLS (§ 171*)—REVOCATION—INTENT.

Under Decedent Estate Law (Consol. Laws 1909, c. 13) § 34, providing for a revocation of a will by testator's burning, tearing, cancellation, obliteration, or destruction of the same with intent to revoke, the essential element of revocation by destruction is the intent to revoke.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 451; Dec. Dig. § 171.*]

5. WILLS (§ 306*)—REVOCATION—INTENT TO REVOKE.

The animus revocandi may be made out either directly, or by declarations, part of the res gestæ, or substantially by inferences from established facts.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 732, 733; Dec. Dig. § 306.*]

---

**6. WILLS (§ 290\*)—REVOCATION—PRESUMPTIONS.**

A codicil, found torn into fragments in the custody of testatrix at the time of her death, will be presumed to have been revoked animus ·revocandi, in the absence of explanatory evidence.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 663; Dec. Dig. § 290.\*]

**7. WILLS (§ 198\*)—REVOCATION OF CODICIL—EFFECT.**

The revocation of a codicil, which revoked a legacy given by the will, will not revive such legacy.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 496, 497; Dec. Dig. § 198.\*]

**8. WILLS (§ 437\*)—NEW YORK SURROGATES' COURTS.**

In construing a will in accordance with Code Civ. Proc. § 2624, providing for such construction, the surrogate proceeds according to the equitable canons of former and existing courts of construction.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 951; Dec. Dig. § 437.\*]

**9. WILLS (§ 439\*)—CONSTRUCTION—INTERPRETATION.**

Before construction of a will can take place, interpretation must be resorted to, if there is doubt as to testator's meaning; interpretation being the explication of testator's intention, when obscurely expressed.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 952, 955, 957; Dec. Dig. § 439.\*]

**10. WILLS (§ 435\*)—RULES OF CONSTRUCTION.**

The established rules of construction and interpretation are ,to be followed in cases involving property; such rules now forming a part of the property itself.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 946; Dec. Dig. § 435.\*]

**11. WILLS (§ 446\*)—CONSTRUCTION.**

While, in construing a will, it will be presumed that testatrix intended the legal and not the illegal alternative, yet the intention, when ascertained, must be given effect, regardless of the consequences to the validity of donations.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 962; Dec. Dig.. § 446.\*]

**12. WILLS (§ 590\*)—DEVISES—CONSTRUCTION.**

Where a mother devised to her son the use of her country house until a granddaughter arrived at the age of 18, then to the granddaughter for life, with remainders over, the son took only an estate for years, subject to be divested upon the death of the granddaughter before reaching 18 years, while the granddaughter took a present vested interest.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1293–1297; Dec. Dig. § 590.\*]

**13. WILLS (§ 756\*)—BEQUESTS—CONSTRUCTION.**

Where a testatrix, in the first paragraph of her will, bequeathed the furniture in a particular residence, that is a specific bequest, which is unaffected by the general disposition of furniture made by another paragraph of the will.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1949–1955; Dec. Dig. § 756.\*]

In the matter of proving the last will and testament of Sarah W. Kathan, deceased. Will admitted to probate, but codicils denied.

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Bergen & Prendergast and Thomas A. McGrath, all of New York City (James W. Prendergast, of New York City, of counsel), for proponents.

Egerton L. Winthrop, Jr., of New York City, special guardian and counsel for Grace F. Butler.

Strong & Cadwalader, of New York City (John L. Cadwalader and Francis Smyth, both of New York City, of counsel), for Caroline W. Field and for Henry W. Butler, the only son of testatrix.

Phelps & East, of New York City, for contestants Adele Sibley (Cootes) and Aline Sibley Whann, legatees under the will dated February 24, 1911.

FOWLER, S. Two testamentary scripts, bearing date, respectively February 24, 1911, and April 1, 1912, are in this proceeding presented for probate as a will and codicil by the executors named in the will. The late Mrs. Kathan, the alleged testatrix, left surviving Henry W. Butler, her only son and heir at law, and her husband, Reid A. Kathan. Neither the son nor the husband of the deceased contest the probate of either paper writing produced in court under the circumstances which I shall mention hereafter.

There are two principal questions in this cause: Revocation and construction. Before proceeding to the consideration of these questions, let me advert in passing to a point of considerable interest in this court, viz., the effect on the attitude of the parties now before me of a clause in the earlier testamentary paper revoking in substance any legacy or device in favor of a legatee or a devisee who should contest the probate or validity of the will. In view of this provision the surrogate cannot fail to observe that the contest here is urged by two of the legatees taking a small specific bequest. The principal beneficiaries meanwhile stand neutral, not choosing to incur the penalties of forfeiture. While the precise point is not really here for adjudication, let me say that in my judgment it is not yet definitely held in this state that a forfeiture would be necessarily incurred by a justifiable invocation, by such legatee or devisee, of the law of the land applicable to this cause. There are some reasons to conclude that the law on this head may be otherwise than as feared by the legatees and devisees taking under the papers propounded. In any event, such apprehension deprives me to some extent of the benefit of their counsel in the solution of difficulties. It seems to me wrong in principle that a legatee may not even suggest a revocation of a codicil without the fear of incurring a forfeiture of his legacy.

It is freely said by the law writers and even by the courts of justice that there is much unnecessary confusion and inconsistency in the common or testamentary law governing penal clauses, or attempted forfeitures prescribed by testators in their last wills. 2 Redfield, Wills, 298; Matter of Stewart (Sur.) 5 N. Y. Supp. 32; In re Wall, 76 Misc. Rep. 106, 136 N. Y. Supp. 452; Note to Mallet v. Smith, 60 Am. Dec. 107. Surely every loyal, thinking person in our political community must deplore undue criticism of the great common law which so wisely regulates every consequential act of our lives, from the cradle to the grave. But there is reason to think that

the common law in this instance is not so defective as supposed, and that the fault lies with the unreasoned adjudications of inferior courts. The doctrine of ulterior tribunals is more consonant with justice. A rule of law is frequently worked out of a larger rule, and in the process applications are apt to differ in principle, and such, I think, is the case with the rule I am about to venture to consider.

The common and testamentary law concerning the validity or invalidity of conditons is largely taken out of the civil or Roman law. But this original is now imbedded in a mass of more authoritative applications by the courts of the common law. Anonymous, 80 Misc. Rep. 10, 141 N. Y. Supp. 700. The strength of the common law lies not only in its superior coalescence with the principles of free governments, but in its wise and measured absorption of those principles of the civil law—the great common law of Europe—which are supplementary or adjuvant in regions where our common law was defective. The process of absorption is best detected in the history of the jurisdictions now exercised by this court and the successors to the old Court of Chancery. The English common law relating to feuds somewhat modified the Roman law of conditions, in so far as conditional devises of lands are concerned, but not materially.

[1] It may be stated as a primary rule of law, now governing legacies, devises, or other testamentary gifts, that the testator may limit them absolutely or on conditions, provided such conditions are lawful by the law governing conditions. Godolphin, pt. 3, c. 4, § 3; 2 Williams, Ex'rs (Ed. 1838) 903; 1 Roper on Legacies, 746, c. 13; Preston, Law of Legacies, c. 5; 2 Jarman, Wills (6th Ed.) 1461; Bryant v. Thompson, 59 Hun, 545, 549, 14 N. Y. Supp. 28, appeal dismissed 128 N. Y. 426, 28 N. E. 522, 13 L. R. A. 745. It is, perhaps, unnecessary to cite authority for so plain a proposition, as the doctrine of conditions lies at the basis of our entire law governing estates, conveyancing, trusts, gifts, and wills. It is, in other words, a part of the modern law of property. But not all conditions may be prescribed by testator, but only those which are lawful in themselves. Testators are not by the common testamentary law justified in prescribing unlawful or impolitic conditions or conditions contrary to the order of the state. 4 Burn. Ecc. Law, 213; Swinburne, Wills, 431, 462.

[2] That a testator has the power to provide that his beneficiaries take or hold only on condition that such beneficiary shall not dispute the will, in whole or in part, is to some reasonable extent determined. But such a general statement requires modification. In any limitation testator must see to it that the condition, as expressed in his will, does not violate the common law governing conditions; otherwise, the condition is void. By the common law it is conclusively established that no condition contrary to the duty or legal obligation of the donee, or contra bonos mores, or contrary to public order or policy, is enforced. Preston, Law of Legacies, c. 5; Anonymous, 80 Misc. Rep. 10, 141 N. Y. Supp. 700. One of the best expositions of the common law of conditions will be found in the Bridgewater Case, entitled Egerton v. Earl Brownlow, 4 H. L. Cas. 210, rejecting

the very restricted view of the lower courts and affirming the invalidity of conditions contrary to public order. Such was distinctly the principle of the later Roman or civil law (J. 2, 20, 36), and it continues the basis of the modern law of all civilized states, once directly or indirectly subject to Roman influences. A condition, for example, that a testamentary donee shall not protect by action any right arising under the will, is contrary to public policy. It is too general. Rhodes v. Muswell Hill Land Co., 29 Beav. 560.

So a condition not to contest a testamentary disposition, prohibited by statute, is void. If, for example, our statutes of mortmain prohibit a testamentary gift to a particular corporation, a condition that another legatee shall not contest such gift to the corporation is clearly void as to him. The testator's gift to the corporation in such case is invalid and contrary to public policy, and consequently the condition by which the testator seeks to maintain his gift to the corporation is equally invalid and contrary to public order, or, in other words, to public policy. The testator in that instance has tried to do what the law expressly forbids, and the condition he prescribes is in furtherance of testator's own unlawful intention. The common law cannot recognize or enforce such an unlawful condition. Strickland v. Aldridge, 9 Ves. 516; Muckleston v. Brown, 6 Ves. 52. Unless a penal condition is salutary it is always void. Such was the Roman law, and so I think is the French law (J. 2, 20, 36; D. 35, 2, 15; 1 Troplong, Des Testaments, 339, 340, 341), and also our common law (Preston's Sheppard's Touchstone, 434, 451).

The French law, while not authoritative here, is evidential of modern Roman law generally. I am aware that it has been denied in England that the French law is so. Evanturel v. Evanturel, L. R. 6 P. C. 1, 9. But it is not difficult to see that Chief Justice Meredith, whose judgment is favored, on appeal, has misread the French jurist Troplong's text. We are at liberty here to think that the judgment of Mr. Justice Taschereau below in Evanturel v. Evanturel was right on the point of French law, although the English Privy Council held the contrary. I should in any event prefer the judgment of Troplong, some time president of the French Court of Cassation, to the judgment of the English Privy Council on such a point of French law. The English Privy Council in Evanturel v. Evanturel appear not to notice a statement of the great French chancellor, D'Aguessau, to the effect that private conventions could not derogate from rights given by the public law. Plaidoyer, vol. 5, quoted in French in Phillimore's Principles and Maxims of Jurisprudence, note p. 68.

But, whatever the French law may be on this point, it was admitted in England in Evanturel v. Evanturel that a condition not to dispute a will was not broken by the legatees' assertion that a certain bequest of a will was obviously invalid. This is but one step in the conclusion I prefer to reach, but it is a step of some consequence to the argument. If a conditional legatee may without penalty assert the invalidity of part of a will, why not the invalidity of the whole will, when the whole will is thought to be invalid or contra legem? What sound difference in principle authorizes a distinction in the two instances just cited? To my mind none.

If a condition is not to dispute the form or factum of a will generally, it is void in the modern French law. A will is a matter of public law:

"Testamenti factio non privati sed publici juris est." Papinian, D. 28, 1, 3; 1 Troplong, Des Testaments, 341, and French Arrêts there cited.

A condition that a legatee or other testamentary beneficiary shall not dispute the probate of a will, not executed according to the requirements of the statute of wills, ought to be taken as void with us as it is in the French law. Otherwise the testator would be permitted to constrain his chosen heirs or legatees to validate an illegal act, and he would thus be enabled to conform or not, as he saw fit, to the statute of wills. This is contrary to what the French law terms "public order," and what our law calls "public policy," and such condition ought therefore to be held, I think, void by our courts. The late English cases attempt to construe such condition as one in terrorem, and they make a distinction between such conditions where there is a gift over and one where there is no gift over. They also distinguish between one who has probabilis causa litiganda and a legatee who has no ground for contesting the will. They seem to hold the condition void in one instance (In re Friend's Estate, 209 Pa. 442, 58 Atl. 853, 68 L. R. A. 447, 9 Prob. Ann. 425) and valid in the other instance.

This leaves the whole matter to a judge, and this is wrong. "Optima est lex quæ minimum relinquit arbitrio judicis," said Coke and Bacon. But so far no ulterior court of England has sanctioned this distinction, except the Privy Council on appeal, and this was in a case arising on the French-Canadian Code. The attempted distinctions of the lower English courts have doubtless received some very distinguished support in this country, not, however, binding in this state on this point. Smithsonian Institution v. Meech, 169 U. S. 398, 18 Sup. Ct. 396, 42 L. Ed. 793. The United States Supreme Court quotes with approval Mr. Roper's work on Legacies (see 4th Ed., Roper & White, 1, p. 795). But Mr. Roper's opinion is a very inconclusive support for so great a tribunal, and Cook v. Turner, 14 Sim. 493, on which he in part relies, held nothing of the kind stated by Mr. Roper. 2 Jarman, Wills (6th Ed.) 1548.

We must remember that the statute of wills is a part of the public law, and a condition that an heir shall not be permitted to show testator's want of testamentary capacity or his other noncompliance with the statute of the state without forfeiting the legacy is, I think, contrary to public order and policy, and the condition, certainly if subsequent, ought to be adjudged void. This was the tendency of the early common law. Morris v. Borrough, 1 Atk. 404. The decision of the Supreme Court of the United States in Insurance Co. v. Morse, 20 Wall. 445, 22 L. Ed. 365, proceeded on the same principle. It was there held that "every citizen is entitled to resort to all the courts of the country," and an agreement in advance that he shall not do so is void. If this is true of an agreement, it is equally true of a condition in a will, and the reason is that both condition and agreement are contrary to public order or policy and consequently null. In Mallet v. Smith, 6 Rich. Eq. 12, 60 Am. Dec. 107, the chancellor, with, I ven-

ture to think, a better perception of the true common-law principle, plainly held a condition not to dispute a will to be contrary to the "liberty of the law." If we observe that this conclusion is consonant with early common law, as well as with both Roman and French law, it cannot be said to be an unfounded conclusion.

It seems to me that this is an instance where the true principle of the common law may be determined by the courts of our own state, without reference to late decisions of the inferior courts of England. Our common law is not concluded by such English judgments in this instance, and I think that our courts have substantially taken this view of the common law when necessary. In Jackson v. Westerfield, 61 How. Prac. 399, 407, Mr. Justice Van Vorst refused to enforce such a condition; for, as he said, there was no proof by the contest of mala fides or vexatious conduct in the legatees' contest of the will. In other words, nothing penal was shown, yet the condition was clearly broken. In Bryant v. Thompson, 59 Hun, 545, 551, 14 N. Y. Supp. 28, the court held in substance that a condition that an infant beneficiary should not contest a will was contrary to public policy, and the appeal from the decision was dismissed. 128 N. Y. 426, 28 N. E. 522, 13 L. R. A. 745.

Now, this last is an important decision on the point of principle involved. To be sure, the judges in Bryant v. Thompson said else that was obiter, and might have been left unsaid. The obiter dictum was said obviously only in an attempt to reconcile prior decisions not worth reconciling. But the adjudged point of that case is clear, that a penal condition in conflict with the "liberty of the law" is void and contrary to public policy in the case of an infant. But they rightly held, I say with deference, that the infant's contest of the will was in no different position from that by an adult. In Woodward v. James, 44 Hun, 95, the courts attempted to exempt an infant from the operation of the condition. But, as said in Bryant v. Thompson, there is no good reason to distinguish between a contest by adults and one by infants, if the infant acts by authority of the court or through an authorized adult. Why, indeed, should an infant be regularly authorized by the court itself, contrary to the express tenor of the will, to contest the will without forfeiture, when an adult beneficiary is held to be restrained by the same penal condition? It has, I know, been said that an adult legatee is not bound to accept a conditional legacy, and if he does accept, he should be held to the condition prescribed by the testator. But forfeiture ought to depend in both cases, not on the acceptance of the legacy subject to the condition, but on the validity of the condition prescribed by the testator. Otherwise the court assumes the whole point in controversy.

That some conditions not to dispute a legacy or a preference under a will are valid cannot be controverted. The law favors such conditions. For example, a legacy of a smaller amount, or a gift of one house, to a son, on condition that he do not dispute a larger devise or legacy to his sister, and a condition that a legatee do not trouble executors of the will in the management of a trust estate, are examples of testamentary conditions which are valid, meritorious, and

enforceable in all systems. 1 Troplong, Des Testaments, 342, 343; Adams v. Adams, L. R. Ch. Div. 1892, 369; Rogers v. Law, 1 Black, 253, 17 L. Ed. 58; Matter of Hollister, 47 Hun, 413. But these valid conditions are very different sorts of conditions from one that a legatee shall not attempt to enforce the law of his country or shall not resort to or invoke the law of the land. A condition not to enforce the law of the land is abhorrent and contrary to right reason and public policy.

Even if I am precluded by precedent from so holding, which I do not believe, then I prefer to be recorded as dissenting in this instance rather than to appear to hold what I deem to be most unjust and impolitic. It will be observed that Mr. Schouler in his treatise on Wills (section 605) states that this question of penal conditions in wills is still open in this country, and he criticises the grounds on which the affirmative judgments have proceeded. And see 2 Redfield, Wills, 298, 299, to same effect. That the spirit of the common law does not sanction a penal condition not to invoke the justice of the courts in a proper case I am convinced.

I am aware that it has been said in this court in a general way that a condition not to dispute a will is valid. Rank v. Camp, 3 Dem. Sur. 278; Matter of Stewart (Sur.) 5 N. Y. Supp. 32; Matter of Barandon, 41 Misc. Rep. 380, 84 N. Y. Supp. 937. While this statement may be true in some cases, it is not always true in all cases. I am not bound by these decisions in any event.

[3] It is a principle of stare decisis that we are not always bound by decisions of courts of co-ordinate authority (Osborne v. Rowlett, 1880, 13 Ch. D. 774, 779; In re Ravensworth [1905] 2 Ch. 1, 3) if they do not appeal to our own conscience. It is only the decisions of courts of higher authority which are conclusive and binding on courts of lower degree. While by comity or courtesy courts of co-ordinate authority usually follow one another, this is in the interest of order and public advantage. But this custom is often relaxed where conscience dictates an independent conclusion and an appeal is permissible from such deviation. It may be otherwise when no appeal lies.

But I will not say more at this time on a point which is not really here for adjudication, but proceed to the consideration of the real points of controversy. When the point noticed is before me and I shall be assisted by counsel, I may feel quite free, and indeed obligated, to change an impression which, while clear, may not be well or sufficiently founded.

I come now to the first question which I am called upon to decide in this cause. I refer to the issue on the allegation of revocation of the writing called the "codicil," dated April 1, 1912. It appears to have been duly and sufficiently executed by the testatrix under the existing statute of wills. But as produced in court by those named in the will as executors of Mrs. Kathan the codicil or testamentary script, dated April 1, 1912, originally consisting of three sheets and a "cover," is torn into many fragments or detached pieces; it having been so torn after execution, as appears by the evidence taken before the surrogate. The proponents in their petition for probate only

formally offer (with a detailed statement of facts concerning its production) the torn testamentary script or codicil of April 1, 1912 These facts, as disclosed by the testimonial evidence, are substantially as follows:

After execution the will, now intact, and the now torn codicil, were both in the exclusive custody of testatrix until about the 30th December, 1912. About the 10th or 11th of December, 1912, as testified to by her maid, testatrix was seized with a fainting "spell" when about to go to market. After she regained consciousness testatrix said to her maid:

"My will is in the red bag in the closet, and if anything happens to me you are the only one that knows it is there."

This evidence was given without objection or exception. On the 15th December, 1912, testatrix was taken seriously ill with her final malady, and her son then suggested to the maid the expediency of taking the jewels of testatrix to a safe deposit vault. The maid then mentioned to the son the will in the red bag of testatrix, and suggested to the son that it, too, be deposited in the safe with the jewels. The maid, without direction from her desperately ill mistress, accordingly went for the red bag in the closet of testatrix, extracted the will, dated February 24, 1911, and also some loose fragments of paper, which she identified on the witness stand as the testamentary script or codicil of April 1, 1912. The codicil was then in fragments, and the will and the fragments of the codicil the maid swears she then handed to the son of testatrix. The son swears he so received them, and, in substance, that on the following morning he placed the will and the fragments of the codicil, just as he received them from the maid, in a safe deposit box, taken in the name of testatrix and himself. There they remained unvisited by any one until the death of the testatrix on January 19, 1913. The two testamentary papers were then delivered to the executors named in the will, who now offer all the testamentary scripts in question for probate as stated.

The will is in a perfect condition, and its due execution has been established. The due execution of the codicil now consisting of 13 separate fragments or pieces has been also established. But in respect of the codicil there is an allegation of revocation, which raises the first material question in the cause. I may observe at this point that the testimonial evidence of the maid and the son of testatrix is not controverted, and it is to be taken as true. Both witnesses are highly respectable and of good repute, and there is no suggestion to the contrary or of their bad faith in the acts stated under oath. Let me, then, proceed to consider further the issue of revocation in this cause. How stands the law concerning this alleged revocation?

It will be remembered that the statute of wills in force in this state prior to the Revised Statutes was but a re-enactment of the original statute of wills, as amended by the statute of frauds (32 Hen. VIII, c. 1; 34 Hen. VIII, c. 5; 29 Car. II, c. 3), both in force in New York prior to the erection of the present state government, whose sovereign authority then re-enacted them without substantial change (1 I. & V. 93; 1 K. & R. 178; 1 R. L. of 1813, p. 364). The Revised Statutes

operated on and amended the last re-enactment of 1813, but with much less change in substance than is sometimes thought. Robins v. Coryell, 27 Barb. 556.

But we are now concerned only with the clauses of the statutes of this state regulating revocation of wills. The fourth clause of the statute of frauds (29 Car. II) was the first legislative attempt in countries subject to the common law to regulate revocation of devises, and the principle of that statute was extended by judicial construction to revocations of wills of personalty, before that time regulated wholly by the civil and canon law. The old statute of frauds provided for a testator's revocation by burning, canceling, tearing, or obliterating (29 Car. II, c. 2, § 4), and so did the re-enactments mentioned (1 R. L. of 1813, p. 364, § 3). The changes instituted by the revisers of the Revised Statutes of this state in the prior common law related to "implied" revocations, and not to "express" revocations. 2 R. S. 64, § 42, now section 34, Decedent Estate Law (Consol. Laws 1909, c. 13), and Revisers' Notes on the R. S. The old law of express revocations was not changed by the Revised Statutes. Revocation by destruction, burning, tearing, or obliterating is an "express" revocation, not an "implied" revocation, and the decisions on this clause of the various statutes of wills are fairly uniform, both in this state and in England. Mr. Mortimer well states that the decisions on the clause of the statute of frauds relative to a revocation by destruction, burning, or tearing apply to the same clause re-enacted in the later Wills Acts. Mortimer on Probate, 182. This statement is as true of the same clause in the various Wills Acts of this state as it is of those in the statutes of England. The cases reported by Johnson, Cowen, or Wendell or other early reporters of this state necessarily, therefore, proceed on the same principle as those reported in our late reports and are of equal authority under the doctrine of stare decisis.

[4] We have not to do here with the effect of a revocation by a partial destruction of some kind, but with the effect of a total destruction of the codicil by a tearing of the same into fragments, now brought into court by the executors and offered formally in their mutilated state for probate. The executors, however, with entire candor submit the matter to the surrogate as non liquet, or a not clear business in this court. It is the Decedent Estate Law (section 34) which now provides for a revocation of a will by testator's burning, tearing, cancellation, obliteration, or destruction of the same with the intent and for the purpose of revoking the same. Some account of this statutory provision has been already given. The clause relating to revocation is taken indirectly out of the old statute of frauds. But the statute of frauds was not the original of the law concerning a revocation of a testament by its destruction. Both the civil and canon law contained provisions not unlike those embodied in the statute of frauds. More than a century since a distinguished practitioner in the old peculiar courts of Great Britain, proceeding on the Roman or canon law, so stated. 1 Browne, Civil Law, 331; and see, also, 1 Gibson's Codex. Of course it is familiar that prior to the statute of frauds revocation of last wills might be made out

by evidence of the parol declaration of testator; but the substance of the law was much the same. The statute of frauds went to the evidence and procedure only.

Since the statute of frauds the essential element of a revocation of a will by destruction—i. e., through a burning, a tearing, or a cancellation of the testamentary instrument—is always, as before the statute, animus revocandi, or testator's intent to revoke the same. Dan v. Brown, 4 Cow. 483, 490; Smith v. Wait, 4 Barb. 28; Waterman v. Whitney, 11 N. Y. 157, 161, 62 Am. Dec. 71; Sweet v. Sweet, 1 Redf. Sur. 451, 454; 4 Kent, Com. 531, 532; Lovelass on Wills (1st Ed.) 346; Theobald on Wills (6th Ed.) 43; Strahan on Wills, 57; Williams on Wills, 65; Lord Mansfield, Cowper, 52; Bibb v. Thomas, 2 W. Black. 1045. Unless animus revocandi by testator is established satisfactorily, the mutilated will must be probated, without regard to its attempted destruction. Quinn v. Quinn, 1 Thomp. & C. 437; Matter of Ackerman, 129 App. Div. 584, 114 N. Y. Supp. 197; Matter of Curtis, 135 App. Div. 745, 747, 119 N. Y. Supp. 1004; In Bonis Tozer, 7 Jur. 134; In Bonis Hannam, 14 Jur. 558; Clarke v. Scripp, 16 Jur. 783; Strahan on Wills, 57.

The special guardian in this cause forcibly contends that animus revocandi has not been established, and that testatrix's retention of the fragments of the codicil is inconsistent with an intent to destroy. He cites to me several English decisions. But in Doe v. Perkes, 3 Barn. & Ald. 489, it appears that a testator, being angry with a legatee, tore his will in four pieces, but was arrested by a bystander. The testator, being thus stopped, expressed regret, and put the pieces together again, and said he was glad that it was no worse. The jury found that the revocation was not complete, and the court sustained the verdict. It seems to the surrogate that the facts in Doe v. Perkes are dissimilar from those established in this cause. Giles v. Warren, L. R. 2, P. & D. 401, was what is called in England a case on a "dependent relative revocation," or a revocation founded on a mistake of fact. The judgment proceeds on that ground. This cause now before me is one of a revocation founded wholly on circumstantial evidence of animus revocandi, and not on proof of a mistake of fact. Thus the cases are not parallel.

[5] Animus revocandi may be made out either directly by declarations, part of the res gestæ (Keen v. Keen, L. R. 3 P. & D. 105; Waterman v. Whitney, 11 N. Y. 157, 162, 62 Am. Dec. 71), or circumstantially (4 Kent Com. 532), i. e., by inferences from established facts, other than testator's competent declarations, equally significant of animus revocandi, and consistent therewith. The declaration of testatrix to her maid to the effect that "her will" was in her bag, even if competent evidence, which I doubt, since the Revised Statutes, is too equivocal to afford any direct evidence of either animus revocandi or animus non revocandi. Testatrix did not say her will and codicil were in her bag. So far as her declaration goes, it may be well argued to be against the continued existence of the codicil. My judgment must abide by the circumstances disclosed in the proofs.

[6] If a testamentary paper is found in the exclusive custody of the testator canceled or mutilated, a destruction by testator himself

animo revocandi is more readily presumed than if the paper were found under other circumstances. 1 Jarman on Wills (6th Ed.) 146; 1 Browne, Civil Law, 331; Matter of Will of Clark, 1 Tuck. 445; Matter of Brookman, 11 Misc. Rep. 675, 33 N. Y. Supp. 575; Matter of Miller, 51 Misc. Rep. 156, 100 N. Y. Supp. 849; Matter of Francis, 73 Misc. Rep. 148, 158, 132 N. Y. Supp. 695; Matter of Ascheim, 75 Misc. Rep. 434, 135 N. Y. Supp. 515; Matter of Hopkins, 73 App. Div. 559, 565, 77 N. Y. Supp. 178, reversed on another point 172 N. Y. 360, 65 N. E. 173, 65 L. R. A. 95, 92 Am. St. Rep. 746. The English cases on a similar statute (section 20, Wills Act) are to the same effect. Boughey v. Sir William Moreton, 3 Hagg. 192, note; Lord Chancellor Eldon in Hare v. Nasmyth, in the House of Lords, Id.; Lambell v. Lambell, 3 Hagg. 568; Williams v. Jones, 7 Notes of Cases in Ecc. Courts, 106; In bonis Lewis, 27 L. J. P. 31.

In the last edition of Jarman (1 Wills, 146) it is said:

"Where a will is found torn after the death of the testator, and there is no direct evidence of intention, the question whether it was torn by him animo revocandi often depends upon the appearance of the paper and other circumstances; the presumption seems to be that the tearing was done by him animo revocandi."

It seems to me that this statement of this learned author requires some modification, if we go by the later cases. Unless the torn paper comes from the custody of the testator himself, it is not clear from such cases that the only presumption is that testator destroyed it animo revocandi. But in this case before me the codicil was found in the actual or constructive custody of testatrix herself, torn into fragments. The codicil, whether in the closet of testatrix or in her safe deposit box, was still in her custody.

There is a total absence of suspicion in this cause that the paper was torn by accident, or by misadventure, or fraudulently by some one other than testatrix herself, so that the adjudged cases on such altered circumstances do not apply. The circumstances established before me conclusively point to a tearing up of the codicil by testatrix, and by none other. It was a rule of the canon law "that, if there be a controversy who did it (i. e., the tearing), it will be presumed to be done by him in whose custody it was" (1 Browne, Civil Law, 331), and where two persons, including testatrix, have access to the paper, the destruction is presumed to be hers "alone," as stated in Browne's Ecclesiastical Law (page 320). In other words, the conflicting presumption of innocence is applied.

In the testamentary common law of this state, in the absence of later inconsistent authority, the rules of the civil or canon law remain influential, as has been repeatedly adjudicated in this court both by my predecessors and myself. The presumption that under the circumstance here disclosed the destruction was by testatrix herself was clear in the old law, and in the absence of later authority the rule should hold in this cause.

On the facts disclosed to me by the evidence, I am constrained to conclude that the codicil or the testamentary script bearing date April

1, 1912, was torn by testatrix herself animo revocandi, and therefore that, under the statute now in force, it was revoked by testatrix, and is not entitled to probate as a codicil to her last will and testament. The will, or the propounded script, dated February 24, 1911, has, on the other hand, been duly proved, and is entitled to probate. There is no contest on that point by any one, although there is a contest upon the legal effect of the will under the circumstances disclosed.

[7] I come now to the second point in the cause, viz., the legal effect of the revocation of the codicil on the bequest contained in the will, but revoked by the codicil. This point is much pressed by the counsel in the cause. By the third clause of the will testatrix bequeathed to Adele Sibley and Aline Sibley Whann a long diamond chain, presumably of value. By the codicil testatrix revoked this specific bequest. What, then, is the legal effect of the revocation of the codicil on such bequest so contained in the will? Is the original bequest ipso facto revived without a republication of the original will, or does such bequest in the will remain revoked, notwithstanding the destruction by testatrix herself of the instrument containing the revocation?

It will be observed that the codicil here contained no general revocation clause, but expressly confirmed the prior will in all consistent respects. There was no attempt or intention to revoke the entire will. On its face the codicil was not intended by testatrix to revoke any devise or bequest not inconsistent with the provisions of the codicil. The codicil so states. There is an old distinction made in the cases between a second or later will and a codicil. A later will is presumably inconsistent with a prior will, but any number of codicils are presumably confirmatory of the will of which they are a part or to which they are annexed. Swinburne on Wills, pl. 1, § 5. Lord Hardwicke held in the great case of Willet v. Sanford that a codicil was a part of the will. This settled the old law on this head. Brant v. Wilson, 8 Cow. 56. Thus a codicil is not now presumptively a revocation of an entire will, but a supplement and a revocation pro tanto. But the only question for me to consider on the codicil now here is whether or not the destruction of such revocatory codicil operated, ipso facto, to revive the specific bequest of the diamond chain to the two ladies named. This seems to be a point of no difficulty.

It will be observed that there is no competent evidence given in this cause, to the effect that it was the intention of the testatrix, by the revocation of the codicil, to revive such bequest to the two ladies named. Indeed, none such was offered. Under such circumstances, the specific bequest of the diamond chain is not revived by the testator's bare revocation of the revocatory codicil. The statute determines this point. Section 41, Decedent Estate Law, formerly 2 R. S. 66, § 53; Matter of Goldsticker, 192 N. Y. 35, 37, 84 N. E. 581, 18 L. R. A. (N. S.) 99, 15 Ann. Cas. 66. Prior to the Revised Statutes there was much uncertainty concerning the legal effect on a prior will of the bare destruction of a subsequent revocatory instrument. In respect of devises one rule obtained, and in the ecclesiastical courts another. Lovelass on Wills and cases there cited (1st Ed.) 347. The

consequence was that formerly much parol evidence was received concerning the testator's real intention. This state of the old law of New York, the revisers of the Revised· Statutes thought undesirable, and intended for the future to correct. See revisers' note to 2 R. S. 66, § 53.

The surrogate is satisfied that on the showing made in this cause the following bequest, contained in the third clause of the will, to wit:

"I give and bequeath to Adele Sibley and Aline Sibley Whann, my long diamond chain, the same to be equally divided between them"

—was expressly revoked by the codicil, and that the revocation of the codicil by testatrix did not serve in this instance to revive such bequest, and it will be so decreed. It follows that the decree of probate should annex a copy of the will as probated, omitting therefrom such bequest of the diamond chain so revoked as aforesaid. Matter of Swartz, 79 Misc. Rep. 388, 397, 139 N. Y. Supp. 1105. The codicil, being revoked, forms no part of the will to be probated.

[8-10] Having now determined the probative force and quality of the several scripts propounded, the surrogate is required to sit as a court of construction, pursuant to section 2624, Code of Civil Procedure. As a court of construction the surrogate proceeds according to the equitable canons of former and existing courts of construction. Before construction of a will can ever take place, interpretation must be resorted to, if there is doubt as to testator's meaning. Interpretation is the explication of testator's intention, when obscurely or defectively expressed. In interpretation it is the duty of the court to bring the written expression of the testator in harmony with the intention. The very ·simplest rule of interpretation is that the document should be left to speak for itself if possible. Only when interpretation is finished, construction begins. Established rules of interpretation and construction are to be followed in cases involving property, for such rules now form a part of property itself.

[11, 12] The interpretation and construction here desired involve, inter alia, the following paragraph of the will of testatrix, already adjudged for probate:

"First, I give, devise and bequeath to my son, Henry W. Butler, all my real estate and premises, with the buildings and improvements thereon erected, situate at Oyster Bay, Nassau county, in the state of New York, together with all the household furniture and other personal property, except, however, jewelry and articles of personal use and adornment therein contained, to be used by him until my granddaughter, Sallie Tappen Butler, shall become eighteen years of age, provided the said Henry W. Butler make the necessary repairs to said premises and pay the required taxes and insurance, but the said premises must be kept up as I leave them.

"Upon my granddaughter, Sallie Tappen Butler, arriving at the age of eighteen, I give, devise and bequeath to her all my real estate and premises, with building and improvements thereon erected, situate at Oyster Bay, Nassau county, in the state of New York, together with all the household furniture and other personal property, except, however, jewelry and articles of personal use and adornment therein contained, for the term of her natural life.

"Upon the death of my granddaughter, I give, devise and bequeath the said property absolutely and forever to the· issue of my said granddaughter; such issue to take per stirpes and not per capita.

"If my said granddaughter shall die leaving no issue her surviving, then,

upon her death, I give, devise and bequeath, absolutely and forever, the said property to the brothers and sisters of my said granddaughter, and to the issue of any of her said brothers and sisters who may have died; such issue to take per stirpes and not per capita."

Two interpretations of this clause just set out in extenso are possible—one which imputes to testatrix an intention to create a perpetuity, and ,another which imputes an intention free from that vice. Was Mr. Henry W. Butler intended to take an absolute term of 18 years, with contingent remainders over, or a term dependent on a life in being? This is the primary question put to the surrogate.

When the intention of testatrix, whatever it is, is ascertained, right construction of the devises must follow, regardless of consequences on the validity of the donations. Central Trust Co. v. Egleston, 185 N. Y. 23, 77 N. E. 989; Cottman v. Grace, 112 N. Y. 299, 19 N. E. 839, 3 L. R. A. 145; Van Nostrand v. Moore, 52 N. Y. 12. The same rule prevailed in the civil law. 2 Domat, § 3159; Pothier, "Traite des Donations Testamentaires," regle IV.

In arriving at the real intention of testatrix there is a very old and familiar rule of interpretation, first found expressed in the civil law (D. 34, 5, 24, De rebus dubiis):

"Quum in testamento ambigue aut etiam perperam scriptum est, benigne interpretari, et secundum id quod credibile et cogitatum, credendum est."

This is the rule for "benign interpretation." This same rule is often expressed in our own common law by the well-known maxim: "Ut res magis valeat quam pereat." See excellent brief of counsel in Everitt v. Everitt, 29 N. Y. at page 55; Manice v. Manice, 43 N. Y. at page 368; Coyne v. Weaver, 84 N. Y. 386; Wager v. Wager, 96 N. Y. at page 174; Roe v. Vingut, 117 N. Y. at pages 212, 218, 22 N. E. 933; Crozier v. Bray, 120 N. Y. 366, 24 N. E. 712. That testatrix intended the legal and not the illegal alternative must be presumed in this court. But I need not dwell on what is so familiar and primary to the profession of the law.

The devises of testatrix must be so reconciled, if possible, that all will take effect, if consistent with the rules of law. I entertain no doubt that the granddaughter of testatrix was intended to take in possession an estate for life, but only provided she reached 18 years of age. Her estate is, however, vested in interest. Eighteen was the terminus a quo of her possessory estate. If so, it is evident that the son of testatrix was intended to take a chattel real or term of years, which should not exceed 18, and be at all times dependent on the continued life of the granddaughter to the age of 18. Morrant v. Gough, 7 Barn. & C. 206. In our law every life estate or term of years may be limited subject to a cesser, and the cesser in a will may be either express or by necessary implication. While a term of years must be certain, a cesser does not render it uncertain.

There was in this will by clearest implication a cesser of the term of years given to Mr. Henry W. Butler. He took his interest or estate subject to be divested by the death of his daughter before attaining 18 years. In this interpretation no violation is done to the abstract rights of the heir at law. Under our law, a testatrix is free to disin-

herit the heir at law, provided she does so clearly or by necessary implication. The interpretation here accorded to the limitation to the son gives proper effect to both the term to the son and the life estate to the granddaughter. Another interpretation precludes giving effect to both.

In my judgment it is most clear that the devise in the first paragraph of the will of testatrix of the Oyster Bay property to her son for his use until her granddaughter should become 18 years of age, and then devise for life to such granddaughter, subject to such term, and with contingent limitations over upon her death, was not intended to give Mr. Butler an estate or interest for an absolute period of 18 years, so that in the event of the death of the granddaughter of testatrix before reaching that age such interest or estate of Mr. Butler would continue on thereafter, and thereby subject the ultimate dispositions of the property to a liability to be defeated by reason of an undue suspension of the power of alienation.

The devise to the son was clearly intended to endure until the granddaughter should reach 18 years of age. Obviously, it must have been intended by the testatrix that, should a prior death prevent the effluxion of 18 full years, the interest or estate of the son would sooner terminate. The limitation over to take effect upon the granddaughter's death makes no reference to its occurring at any particular time, or either before or after the happening of any specified event, so that when such death does take place the remainders, as a result, will at once become effective and vest an interest and possession in those then entitled. It is a rule of law that when a substitutional fee, or a life estate, or any remainder, is limited on an event, with a clause of cesser curtailing such event, the remainders take effect as provided in the limitation. In other words, the interest of the son, if here really, as I hold, made dependent on the granddaughter's life, will cease at her death before attaining the age of 18. If she does not die, it will continue for 18 years.

What is to become of the interest of the son in case he should die before the granddaughter reaches 18 years of age, or in case of a failure on his part to perform the conditions on which the bequest of the term is made to him, are questions which concern matters that may never happen and have at present no practical application. I do not think they should be made the subject of judicial determination until a situation arises which calls for it. The parties in interest at that time may not be the same.

[13] There is but one question remaining, which I shall deal with most briefly: The disposition of the household furniture contained in the country house at Oyster Bay and disposed of by the first paragraph of the will plainly segregates that particular property from the rest of the personal property of the testatrix, and this whether the same is of like character or otherwise, and makes it a specific bequest. Such specific bequest is manifestly unaffected by the general disposition of furniture made by the second clause of the will.

Settle decree in conformity with this expression of my judgment.